JOHN W. MANSON, Executor,

*vs.*

WILLIAM K. LANCEY, and another.

Somerset.    Opinion March 28, 1892.

*Promissory Note.  Limitations.  Payment.  R. S., c. 81, § § 97, 100.*

An indorsement on a promissory note of the value of a quantity of lumber delivered to the payee by the maker, made by express agreement of the parties four years after the delivery of the lumber, will be deemed a payment on the note, as of the date of the indorsement, which will prevent the operation of the statute of limitations, it not appearing that there was any agreement, express or implied, to appropriate the lumber to the payment of the note at the time of the delivery.

ON REPORT.

Assumpsit on a promissory note. The defendants pleaded the general issue and statute of limitations.

The case is stated in the opinion.

*D. D. Stewart, J. W. Manson,* with him, for plaintiff.

*S. S. Brown,* for defendants.

It is the payment, and not the indorsement of the payment, that extends or renews the note. If payment was not such, when the boards were delivered, no payment has ever been made. The indorsement recites it was same as if made when the boards were delivered, and to draw interest from that time, thus recognizing the equity of such construction as to time of payment. *Sargent* v. *Southgate,* 5 Pick. 311; *Robinson* v. *Perry,* 73 Maine, 168. Uncertainty as to amount of boards received does not destroy the effect of payment. *Dinsmore* v. *Dinsmore,* 21 Maine, 433 ; *Barnard* v. *Bartholomew,* 22 Pick. 391. The act of indorsing payment was plaintiff's, defendants' consent not established. *Blanchard* v. *Blanchard,* 122 Mass. 558 ; *Brightman* v. *Hicks,* 108 *Id.* 246.

WHITEHOUSE, J. Assumpsit upon a promissory note of which the following is a copy :

"Pittsfield, Feb. 22, 1875.

"For value received of J. C. Manson I promise to pay him or

order four thousand dollars in one year from date and interest at the rate of eight per cent, semi-annually until paid.

> " W. K. Lancey.
> "Isaac H. Lancey, Surety."

The following indorsements appear upon the note, viz :

"March 6, 1876, received three thousand dollars."

"May 3, 1880, rec'd of I. H Lancey five hundred forty-one dollars and twenty-five cents."

"Jan'y 21, 1881, rec'd check by Robert Dobson & Co. $328.86 by hand of I. H. Lancey."

" Oct. 16, 1885, by 2226 feet of boards at $15.00 per thousand, delivered about June 1, 1881, to be indorsed with interest on same from that time to now, by order of I. H. Lancey. Boards were had of W. K. L."

The defendants admitted the first three indorsements, but denied the last one and claimed that the action was barred by the statute of limitations. The writ was dated February 23, 1888.

Section 97, of chapter 81, R. S., provides that no acknowledgment or promise takes the case out of the operation of the statute, "unless the acknowledgment or promise is express, in writing, and signed by the party chargeable thereby." But section 100, of the same chapter says that, "nothing herein contained alters, takes away or lessens the effect of payment of any principal or interest made by any person. But no indorsement or memorandum of such payment, made on a promissory note, by or on behalf of a party to whom such payment is made, or purports to be made, is sufficient proof of payment to take the case out of the statute of limitations ; and no such payment made by one joint contractor affects the liability of another." It is well recognized and familiar law that the " effect of payment of any principal or interest" made and intended as part payment of a debt is an acknowledgment of that debt and a renewal of the obligation to pay it. *Sinnett* v. *Sinnett*, 82 Maine, 278.

In other words, while a mere acknowledgment or promise must be in writing and signed by the party chargeable, to render

it valid, a new promise is implied from the fact of a partial payment of principal or interest. *Sibley* v. *Lumbert*, 30 Maine, 253.

But, it is the fact of payment that operates as a renewal of the promise and removes the statutory bar, and not merely the indorsement on the note. The indorsement is simply evidence of payment, and sufficient evidence only when made by the party liable to pay the note. The indorsement may never be made, but if the fact of payment is satisfactorily established by other evidence, it is equally effectual to save the case from the operation of the statute. It is well settled that such payment may be proved by parol. *Egery* v. *Decrew*, 53 Maine, 392; *Evans* v. *Smith*, 34 Maine, 33; Wood on Limitations, sections 105, 115; *Blanchard* v. *Blanchard*, 122 Mass. 558.

In the last named case, the question was carefully considered and the leading authorities bearing upon it were critically examined and distinguished. In that case there was an indorsement on each note in the defendant's handwriting to the effect that fifty dollars had been received on it. It appeared, however, that no money was in fact paid. But, the plaintiff offered to prove that it was agreed between the parties, when the indorsements were made, that they should be deemed payments sufficient to save the note from the statute of limitations. This evidence was held inadmissible. The court said, " Payment, within the meaning of the statute, must be the actual payment of money or its equivalent; it therefore necessarily follows, that an indorsement, which it is agreed does not represent such a payment, and is not signed by the party to be charged, cannot be made, by force of an oral agreement, evidence of a new and continuing contract. . . . There can be no question that oral agreements are competent to prove that certain payments of money, or that a note, or the transfer of property, or settlement of accounts, or the assuming of certain obligations of a pecuniary character actually performed, are, as between the parties, to be taken as payments on account of, or in reduction of, a particular note within the meaning of the statute; but we are of opinion that such oral agreements must conform to and relate and give color to some actual transaction, whereby something of value passes between the parties."

In *Bodger* v. *Arch*, 10 Exch. 333, it was agreed between plaintiff and defendant that the future maintenance of the plaintiff's child by the defendant should be taken in part payment of the interest on the defendant's note held by the plaintiff; and it was held that such maintenance of the child must be deemed part payment within the statute. Baron Parke said : "The part payment need not be in money, but in any mode which the parties agree shall be treated as equivalent to a payment in money. Therefore, the settlement of accounts in 1839, whereby it was agreed between the plaintiff and defendant that the interest up to that time should be considered as paid and discharged, is such a payment as took the case out of the statute. My brothers are all of opinion that the maintenance of the child, part of which took place within six years before the commencement of the action, being the agreed mode of payment of interest, was a payment within the meaning of the exception." Baron Martin was of opinion that any facts which would prove a plea of payment of interest, in an action brought to recover it, would be sufficient to bar the statute.

In *Amos* v. *Smith*, 1 H. & C. (Exch.) 238, the plaintiffs were trustees of a marriage settlement, and lent to the husband, in 1833, some of the trust money which was settled to the separate use of the wife, upon the security of a bond, executed by him and the defendant as surety, conditioned for the payment of eight hundred and sixteen pounds and interest. No interest was paid by the husband, and in 1847, it was arranged between the plaintiffs, the husband and the wife, that she should give the plaintiffs a receipt for the interest due to that date, which she did ; and she afterwards gave receipts to the plaintiffs for each half year's interest until 1860. No money passed between the parties, and it was held that the transaction amounted to a payment or satisfaction of the interest so as to take the case out of the statute of limitations. It was a mode of settlement of accounts between the parties, and Baron Bramwell was of opinion that the wife could not maintain a suit against the trustees to enforce payment of interest to her. "If," said he, "the money had been paid by the husband to the trustees

and immediately handed over by them to the wife, that would have been a mere idle ceremony. There are numerous cases which establish that there may be a payment by settlement of accounts. When two persons indebted to each other meet and agree to set off their respective debts, that is not a mere settlement of accounts, but is as much a payment as if the money had passed between them."

In the case before us, the question presented for the decision of the court on the evidence reported, is whether the boards mentioned in the last indorsement are to be deemed a payment on the note made when they were delivered in 1881, or as a payment made at the date of the indorsement.

If the boards were received under a mutual agreement, express or implied, that they were to be then appropriated in part payment of the note, and the party from whom they were received had authority at the time of the delivery to make such appropriation, they must be deemed a payment made at the date of the delivery. The boards in question appear to have been a part of a lot which originally belonged to William K. Lancey, the maker of the note. It is satisfactorily shown by the testimony that the entire lot of lumber was under a mortgage to the defendant, Isaac H. Lancey, and two others, as indemnity for signing this and other notes. William K., therefore, had no authority to apply any part of this lumber to the payment of a particular note without the consent of Isaac. Nevertheless, he assumed to deliver to the plaintiff's father, the payee of the note, the amount in question without the consent of the mortgagee. Isaac testifies that he had no knowledge whatever of the original transaction. There is no evidence in the case showing any express agreement between William K., and J. C. Manson that the boards were to be applied in payment of the note. The only person living who has any knowledge of that transaction is William K. He was not called as a witness, and his absence has significance upon this point. Nor can any such original agreement, to apply the boards to the note, be implied from the circumstances and situation of the parties, for William K., had no authority to make such an arrangement at that time. Furthermore, it

appears that Isaac exercised acts of ownership and control over the entire lot of lumber and claimed that it was his property. He personally sold a quantity of it to Dobson, received the check in his own name and applied it to the payment of the note as shown by the first indorsement. It appears, however, that after Isaac learned of the delivery of the lumber to Manson, he had several interviews with him in regard to the amount, but there was a dispute in relation to it, and no agreement to indorse the amount on the note was ever made during the life-time of J. C. Manson.

The indorsement of October 16, 1885, is in the handwriting of the plaintiff, and there is a conflict of testimony respecting the circumstances under which it was made. The plaintiff testifies that Isaac expressly authorized and directed him to indorse the amount on the note according to his figures, and that thereupon he wrote the indorsement as it now stands, in Isaac's presence ; that he read it to him and that Isaac distinctly assented to it. Isaac denies that he ever authorized it or consented to it. But the plaintiff's testimony upon this point is corroborated by other witnesses and by all the circumstances and probabilities connected with the transaction. It was for Isaac's interest to have the indorsement made, both to reduce the debt, and to avoid a threatened suit. He admits that he was present when the indorsement was made, and that it was read to him. It recites the fact that it was done "By order of I. H. Lancey ;" and it is highly improbable that the plaintiff would have the hardihood to read a false statement to him, and after hearing him repudiate it still rely upon it as a valid indorsement, and remain inactive until the note was barred by the statute of limitations.

The language of the indorsement is in entire harmony with the plaintiff's theory. It was not worded with studied accuracy but the meaning is plain. It is in the form of an entry of credit : "By 2226 feet of boards which were delivered about June 1st, 1881 ; and it is agreed that they are now to be indorsed with interest on same from that time." Such is the obvious pur-

port. It does not mean that they were delivered to be indorsed in 1881, for it would be manifestly absurd to say that it was agreed in 1881, that they should be then indorsed with interest "to now."

The conclusion is, therefore, irresistible, that on October 16, 1885, Isaac, with a full understanding of the facts, ratified the act of William in delivering this lumber, and intentionally assented to the indorsement in question as representing a settlement of the account and a valuable consideration passing from him to the plaintiff at the time of the indorsement. The lumber had been delivered generally on the credit of the plaintiff's testator. He was liable to account to the defendant, Isaac, for the value of it. By the settlement, Isaac received that value in reduction of the debt which he was liable to pay. It was a transaction which would have supported a plea of payment in an action on the note. William K., was interested in the property as mortgagor and made no objection to the indorsement.

The long delay has been at the instance of the defendant and for his accommodation. The plaintiff's forbearance should not inure to his prejudice ; and while the sound public policy which underlies the statute of limitations, regarded as a statute of repose, is not to be questioned, the position of the defendant in this case is not so meritorious as to justify the court in giving less than its full value to all the evidence tending to support the plaintiff's contention.

The note is not barred by the statute of limitations.

*Judgment for plaintiff.*

PETERS, C. J., WALTON, LIBBEY, EMERY and HASKELL, JJ., concurred.