## LEON H. VIETS
*vs.*
## RAYMOND J. MARKS

Court of Common Pleas     Hartford County     File No. 40131

MEMORANDUM FILED FEBRUARY 23, 1942.

*William M. Harney,* of Hartford, for the Plaintiff.

*Cornelius J. Danaher,* of Meriden, for the Defendant.

MOLLOY, J.   This is a suit to recover on an open account. As of November 1, 1928, the indebtedness of the defendant was $350.   From the books of account, Exhibits A, B, and C, there can be little doubt but that there is now owed by the defendant $957.27, with interest from November 22, 1934. There is no merit to the defendant's first defense of payment in full of the account.   The struggle in the case concerns the second defense, which claims that the debt is barred by the statute of limitations, it being the defendant's contention that he had no dealings whatever with the plaintiff since April 2, 1932.   Although not raised in the pleadings, there is a further question now posed that there was no connection between the plaintiff and the defendant concerning any of the matters set, forth in the bill of particulars, which is a statement of the account, but rather that if the indebtedness is legally due, it is to C. P. Viets & Son, a partnership then existing between the plaintiff and his father, but since dissolved, with nothing in the evidence to show that this partnership sold, assigned or transferred any interest in any indebtedness due from the defendant to the partnership, to Leon Viets, the present plaintiff.   This claim presents a question of pleading and the interpretation of section 5531 of the General Statutes, Revision of 1930.

The business relations between C. P. Viets & Son and the defendant started in 1913 or 1915 and concerned the buying of, selling to, and exchanging of cows with the defendant.

The question of the application of the statute of limitations arises by reason of transactions which took place between the plaintiff and the defendant October 9, 1930, and March 25, 1932, and the legal conclusions to be drawn therefrom.

On October 9, 1930, the defendant, having advertised an auction of his herd of cattle, was in the process of selling them

when one of his creditors attached the cows. The plaintiff, his then brother-in-law and a creditor, and one Nathan Becker, another creditor, came to his rescue by paying the attaching creditor $637.89 and securing a release of the attachment. This payment was charged against the defendant's account. The defendant then executed and delivered to C. P. Viets & Son, of which the plaintiff was a partner, and Becker, a bill of sale of the defendant's cows and a truck as security, and on the same day they sold and transferred the property to the defendant by conditional bill of sale. The defendant took possession of the cows and truck.

In March, 1932, the plaintiff learned that the defendant was neglecting his cattle and upon investigation found them to be in a badly emaciated condition. Whereupon, after dissolving his partnership with Becker in the conditional bill of sale and allowing him $50 for his interest under date of March 25, 1932, as evidenced by plaintiff's Exhibit E, he took the cows, 13 in number, and the truck into his possession, allowing a credit to the defendant for the then value of the cows of $160. No value apparently was set on the truck. The plaintiff subsequently expended $24 for repairs on the truck and sold the same to one Clark for $185, payable in installments. The final payment on this deferred payment plan was on November 22, 1934. Suit was brought by service on the defendant November 19, 1940. So that we have the cows and truck taken by the plaintiff on March 25, 1932, and the last installment payment on the truck on November 22, 1934.

It is the contention of the plaintiff on this situation that there being no legal objection to his making a sale of the truck on the deferred payment plan in the absence of a contractual prohibition against it, then there is no legal objection to his crediting the defendant's account with the payments as they are made, and thus deferring the running of the statute of limitations till the last payment or credit. This is disputed by the defendant and thus we have the question: Was the operation of the statute suspended by the deferred payments?

It appears from the evidence that from the time the plaintiff took the cows and truck, March 25, 1932, he had no dealings or contacts with the defendant. He told him nothing concerning the sale of the cows or truck, nor anything about the credits he was giving his account by any payments on the truck by its purchaser, Clark. The defendant testified, and it is apparently true, that he never authorized the plaintiff to

sell the truck and defer the payments thereon, nor did he, directly or indirectly, authorize anyone to make payments on his account, and at no time did he have any knowledge that C. P. Viets & Son, or the plaintiff, was crediting his account with the deferred payments; and finally, that he never made any promise, directly or indirectly, to pay the balance due on his account.

The governing principle concerning the acknowledgment of an indebtedness sufficient to remove the bar of the statute of limitations (Gen. Stat. [1930] §6005) is stated in *Dwyer vs. Harris,* 128 Conn. 397, 400, quoting from *Potter vs. Prudential Ins. Co.,* 108 Conn. 271, 280, as follows: "The determination of whether a sufficient acknowledgment has been made depends upon proof that the defendant by an express or implied recognition of the debt voluntarily renounced the protection of the statute."

To suspend or remove the operation of the statute, it is the generally accepted rule of law that there must be an express or implied acknowledgment to pay the obligation. 34 *Am. Jur. Limitation of Actions* §300. In other words, in order to hold the defendant by reason of the deferred payments on the truck sold by the plaintiff, there must be deduced an admission or acknowledgment by the defendant of a subsisting debt from which a promise to pay may be implied. The plaintiff did not claim or rely upon any new promise or new acknowledgment directly by the defendant. His sole claim was that the deferred payments tolled the statute, even though the payments were made without the knowledge of the defendant and made by a stranger to him and not authorized by the defendant.

"Inasmuch as a part payment, in order to remove the bar of the statute of limitations, must have the effect of an acknowledgment of the debt or a new promise, it is established that such a payment, whether made before or after a debt is barred by the statute of limitations, does not toll the statute or revive the debt unless made by the debtor himself or someone having authority to make a new promise for the residue.... It follows that a part payment is insufficient if made by a stranger, or by one who was not authorized to represent the debtor, and it has been held that a creditor cannot be made the agent of the debtor to such an extent as to make an act done by him operate as a new promise to himself." 34 *Am. Jur. Limitation of Actions* §353.

A payment to toll the statute of limitations must be made or authorized by the debtor. *White vs. Pittsburgh Vein Coal Co.,* 266 Pa. 145, 149, 109 Atl. 873, 875.

"Part-payment, in order to take a debt out of the operation of the statute of limitations, must be made by the debtor himself, or some one legally authorized to act for him. Payment by a stranger will have no such effect.

"The same is true of an item of credit in an open and mutual account current. If the only item in the account, within six years of the date of the writ, is a credit of cash, and this item is relied upon to take the account out of the operation of the statute of limitations, it must be made to appear that the credit was authorized by the defendant himself, or some one legally competent to act for him; otherwise, the account will be barred." *Sawyer vs. Lufkin,* 58 Me. 429, 430.

The plaintiff relies upon *Manson vs. Lancey,* 84 Me. 380, 24 Atl. 880. In that case there was an endorsement on a note on October 16, 1885, of lumber delivered of a certain value under date of June 1, 1881, with the knowledge of the defendant liable on the note. The defendant was fully aware of the transaction, and the court observed (p. 386 of 84 Me.) that "long delay has been at the instance of the defendant and for his accommodation. The plaintiff's forbearance should not inure to his prejudice." The case is not analagous and it is clear that whatever was done was with the knowledge of the defendant debtor.

The instant case is not analogous to the situation where there is a voluntary assignment for the benefit of creditors, wherein the assignee is directed to convert the assigned property into money and apply it to the payment of the assignor's debts. In such a case it was held that the payment tolled the statute of limitations. The court said that when the payment was made in pursuance of his express direction it was the act of the debtor, for his benefit, and out of his property. *Letson vs. Kenyon,* 31 Kan. 301, 1 Pac. 562. The principle of that decision is that the debtor constituted the assignee his agent and everything the assignee did in the premises was in effect the act of the debtor. 34 *Am. Jur. Limitation of Actions* §364. To similar effect is *Robinson vs. McDowell,* 133 N.C. 182, 45 S.E. 545 and *Holloway vs. Wetzel,* 86 Utah 387, 45 P. (2d) 565, 98 A.L.R. 1006. Payment by an assignee, receiver or

trustee in bankruptcy is not made under circumstances ordinarily from which a promise to pay the balance of an indebtedness may be inferred. 98 A.L.R. 1012, annotates the law arising in such situations.

In the instant case when the plaintiff took the truck, sold it and accepted payments thereon from a stranger, Clark, neither the plaintiff nor Clark had authority from the debtor to do as they did, nor were they the agents of the debtor. There must be this agency before there can be any acknowledgment of the remainder of the debt from which a promise to pay may be implied. Our Supreme Court quoted from *Murdock vs. Waterman*, 145 N.Y. 55, in *Broadway Bank & Trust Co. vs Longley*, 116 Conn. 557, 564, to this effect: "It is obvious that a payment by a stranger, or by a person not authorized to represent the debtor, affords no ground for assuming any admission on his part, or for inferring a new promise by him to pay the balance of the debt, and a payment not made by him or by his authority cannot, therefore, arrest the running of the statute."

As counsel for the defendant well observes, there is nothing in the record which gives to the named plaintiff in this action any right to sell property and defer the payments, or give credit for any sales by C. P. Viets & Son, or Becker, or both, upon any alleged account of Leon Viets. No authority is alleged and no proof is offered of such by the named plaintiff to sell property and make payments upon an account of Marks.

The second claim of the defendant arises by reason of the fact that the C. P. Viets & Son partnership had been dissolved and it does not appear in the complaint nor in the evidence that C. P. Viets & Son sold, assigned or transferred any interest in any indebtedness to it from Marks to Leon Viets, the named plaintiff, as required by section 5531 of the General Statutes, Revision of 1930, which provides as follows: "The assignee and equitable and bona fide owner of any chose in action, not negotiable, may sue thereon in his own name; but he shall in his complaint allege that he is the actual bona fide owner thereof, and set forth when and how he acquired title thereto."

From this the defendant argues that the plaintiff has no right of recovery, citing *Uncas Paper Co. vs. Corbin*, 75 Conn. 675, in support of his claim. In that case the plaintiff did allege it was the actual *bona fide* owner of the claim in suit

by virtue of a written assignment executed and delivered to it. The holding was that while a general denial of such allegation admitted the due execution and delivery of the writing, it put in issue the plaintiff's right to sue as the actual *bona fide* owner of the claim. It differs from the instant case in that here there is no allegation at all to the effect required by the statute.

"Under the statutes of this State, the assignee of a non-negotiable chose in action cannot sue in his own name without showing that he is its owner in his own right and for his own benefit, without accountability." *Uncas Paper Co. vs. Corbin, supra*, p. 677. But *Bennett vs. Lathrop*, 71 Conn. 613, at page 616, says: "The omission in the complaint of the averment required by statute, that the plaintiff was the actual and *bona fide* owner of the several choses in action, was a formal defect of pleading which could only have been taken advantage of by demurrer. *Wall* v. *Toomey*, 52 Conn. 35, 39; *Trowbridge* v. *True*, ibid, 190; *Merwin* v. *Richardson*, ibid, 223; *Donaghue* v. *Gaffy*, 53 id. 43."

In accordance with the holding on the defense of the statute of limitations, judgment is directed for the defendant.