ROBERT RIVES, guardian of John N. Massey, plaintiff in error, vs. DUDLEY SNEED, defendant in error.

1.] After the Superior Court has passed an order under the Act of 1856, making a child the adopted child of a person not his parent, if the same Court have the power to rescind the order, it is a matter of discretion with it which the Court cannot control.

[2.] An **Ordinary** has no jurisdiction to appoint a guardian for an infant whose residence is out of his county.

[3.] The adopted father of a child is as much entitled to the custody of his person as his actual parent.

Motion to set aside order and judgment of Court changing name of minor &c., from Lee county. Tried before Judge ALLEN, April Term, 1858.

At a prior Term of the Superior Court of *Lee* county, upon the petition of Dudley Sneed, John Needam Massey, a minor, six or seven years old, had been declared his adopted child, his name changed to John Needham Massey Sneed, and the rights of each to be the same as if the said minor had been born the natural legitimate child of the said Dudley Sneed. This proceeding was had under the Act of 1855–1856.

At the next Court Robert Rives presented his petition, showing that he was the regularly appointed guardian of said minor and had been since the 3d of October, 1855, and that said Sneed, upon an *ex parte* application, obtained the judgment of the Court before recited, without the knowledge, consent or approbation of the plaintiff or the said minor or his friends; and that said judgment was unjust and illegal, because :

1st. It deprives plaintiff of vested rights secured to him by letters of guardianship granted before said judgment was obtained, and previous to the Act of the Legislature under which said proceeding took place.

2d. That by said judgment, defendant acquired valuable rights from said minor, without any fair equivalent to said minor.

3d. That by said judgment said child loses its name, and thus is estranged from its family and friends, to the great mortification of its father's nearest relatives, at whose solicitation and entreaty this protest is made.

4th. That said minor is possessed of sufficient property, together with the proffered aid of friends and relatives of his father, to provide for him comfortably and for his proper intellectual and moral training, and is not dependent upon the kind intentions of a stranger to his blood and name.

5th. That said judgment deprives petitioner of the custody, care and control of said child, confided and committed to him by the proper authority of Randolph county, with the consent of its paternal and maternal relatives, and confides the same to a stranger to his blood.

6th. That the Act of the Legislature is not only unjust and unwise, but unconstitutional and void.

Wherefore, he prays that said judgment may be vacated and set aside.

Whereupon the Court granted an order that defendant show cause why said application should not be granted, &c., and all proceedings under said judgment be stayed until further order.

Defendant appeared and pleaded, that the Court there had no jurisdiction of the matter, because the question as to the validity of the judgment had been carried to the Supreme Court.

That the proper mode to test said judgment was by bill of exceptions to the Supreme Court.

That, by said judgment, both defendant and minor acquired vested rights which this Court cannot defeat.

Answering, he says, that it is not true, as stated in said rule, that plaintiff is the legal guardian of said minor; that Needham Massey, father of said minor, in the year 1854 died intestate, leaving a considerable estate of the value of——, residing at the time of his death in the county of Dougherty; that some time previous to his death, by marriage contract with his wife Lydia, the mother of said minor, he appointed and nominated Jesse Cock, of Lee county, brother of said Lydia, trustee and guardian of the person

and property of said minor; and said Cock accepted the appointment and has acted under it until now, superintending the child's property. At the death of said Lydia, which took place in the year 1852, the said minor, then 18 months old, was brought to the house of defendant by consent of father and guardian of said child, where he remained until 6th August, 1857, when, without the knowledge or consent of defendant or his wife, and while the said child was away from defendant's home, he was carried away by Sarah Rives, the wife of plaintiff, and against the will and consent of the child; that during the lifetime of said Massey, the child's father, he was willing and anxious to have the child, remain with defendant and his wife, who are as near of kin as Rives. That before the death of the child's father, plaintiff desired him to allow the child to live with him, and the father refused, and preferred the child to remain with defendant; that defendant is worth $30,000, and the child would get more from him than he would from the child, provided he should inherit from the child.

Denies plaintiff's not having notice of his intention in getting the judgment, and that the judgment is right, &c., and the letters of guardianship are void because the Court granting them in Randolph had no jurisdiction, the child living in Lee, and had no property in Randolph, and that the estate of Massey, deceased, in Rives' hands was fully administered, and that Jesse Cock was the testamentary or appointed guardian of said child, and acted as such a long time, providing for him until defendant provided for him; admits the child will get from his father's estate 6 or $8000; that said Rives has three children, defendant has none, and he and his wife are much attached to the child; Rives is insolvent, and his property is beyond the reach of his creditors.

It was agreed that the Court should decide the application without a jury.

*Jesse Cock* testified that Sneed was a fit and proper person

to take charge of the child; he was worth from 15 to $20,000 over and above his debts, and he, as the uncle of the child, was willing for him and his wife to take the minor. They had no children. Sneed was about or over fifty years of age, and his wife about forty-nine. The child's mother died when he was an infant, and Mrs. Rives nursed him. Mrs. Rives was kind and affectionate to him, but thought more of her own children. While Rives' family was sick, Mrs. Sneed took the child home, and it remained there until last August, when Mrs. Rives again took it home from Smithville. Massey died at witness' house in Lee county; deceased's plantation was in Dougherty, and he claimed his home there. Witness is trustee under the marriage contract between Mr. and Mrs. Massey, and holds the property in trust for the two children. Witness heard Massey, a day or two before he died, say he wished Mr. and Mrs. Rives to raise his children. Said it was the wish of his wife before her death, and he had no reason to change it. That Mrs. Rives was willing for Mr. Sneed to take John, but that he did not wish him to raise him; had no objection to Mr. Sneed having the child until he was old enough to go to school, but then he must go to Mrs. Rives and go to school, and both be raised together. Regards Rives insolvent; that is, money could not be forced from him by law. Rives is a religious man. The children's property in hand is worth 7 or $8000, and altogether they are worth from 18 to $20,000.

The marriage contract between Mr. and Mrs. Massey was introduced, by which all Mrs. Massey's property before marriage was vested in Jesse Cock, as trustee for her and her children, free from the debts, &c., of her husband, to be held by said trustee during coverture.

*Thomas Hughes* testified that he had known Dudley Sneed and his wife a long time; had seen the child at their house. They manifested as much affection for it as if it had been their own, and corroborated what Jesse Cock testified about

the wishes of Mr. Massey, expressed about the child a day or two before his death.

It was admitted that Franklin Cock, J. T. Cock, and Jesse Cock, brothers of Mrs. Massey and uncle of the child, knew of the intention of Sneed, and were willing he should adopt the child.

Robert Rives then introduced letters of administration granted to him in Dougherty county in 1854 on the estate of Needham Massey, and letters of guardianship of John N. Massey and Sarah Massey, orphans of said Needham, from Randolph county, dated 3d October, 1855.

Rives moved to Ranpolph county in the winter of 1854–5; at the time of granting letters of guardianship, lived in Randolph at Rives', and that John N. was at Sneed's in Lee, and had been nearly ever since his father's death.

*Drury Massey* testified he was the only brother of Needham Massey, deceased; his father's name is Needham; still living, and is a man of considerable property; and should he die without a will, these children will inherit from him a sufficiency to support, educate, and set them out well in the world. This child is named for both grandfathers, and Needham Massey Senior, is deeply mortified and bitterly opposed to his being adopted by Dudley Sneed, and to his name being changed. He corroborated the other witnesses about Mr. Massey's expressions concerning his children, just before he died—Rives was present. His brother was speaking of and contemplating the prospect of death. He then said he wanted his children raised properly; and to Mr. Rives he said: "I want you to bring them up in the nurture and admonition of the Lord; give them a good substantial education; I had rather have them raised with a good substantial education, and start in the world without a cent, than raised by Sneed and inherit his whole fortune." That Mrs. Rives was anxious to let Sneed have John, but he did not desire it. He might stay there until he got large enough to go to school, but then he must go home and go to school

with his sister; and if Rives was not able to raise them, witness must take them. Witness desired Rives to raise them in preference to Sneed, on account of his brothers' wish. Needham Massey said his wife was very anxious for Mrs. Rives to raise her children, and he had no desire to alter it.

After argument, the Court refused to vacate _the_ judgment, and plaintiff excepted.

The plaintiff then moved to have the grandfather of said child, Needham Massey Senior, appointed guardian _ad litem_ of said minor for the purpose of having the rights of said minor, growing out of this transaction, properly represented.

Which the Court refused to do, and plaintiff excepted and assigns error.

VASON & DAVIS; WARREN & WARREN, for plaintiff in error.

WEST; KIMBROUGH; McCOY & HAWKINS, for defendant in error.

So nearly allied to the foregoing case is the following, that they are reported and decided together.

DUDLEY SNEED, plaintiff in error, vs. ROBERT RIVES, guardian, &c., defendant in error.

_Habeas corpus_, from Randolph, before Judge KIDDOO.

Dudley Sneed sued out a _habeas corpus_ to obtain the possession of John N. Massey Sneed, the minor who is the subject of the foregoing case, and introduced in evidence an exemplification of the record of the Superior Court of Lee county of the judgment obtained by him in said Court, and which has already been recited, and closed his case.

Defendant introduced the affidavit of Needham Massey and J. W. Massey, and a certified copy of a _rule nisi_ granted at Lee Superior Court, which has been already recited. Rives' an-

swer in the matter was also read, which sets out substantially the facts as stated in the testimony of the witnesses in the preceding case, and that at the time he took the child from Sneed, it was time for him to be put to school, and that Sneed surrendered it quietly. He always considered his home the child's home after the earnest and solemn request of the children's parents that they should raise them. The child went to Sneed's because his wife was in feeble health, and had her own sick children to attend to, and because he, the said minor, was then weaned.

Defendant closed, and plaintiff, in rebuttal, read the affidavits of Jesse and Isaac T. Cock, which are in substance the same as their testimony before reported. They are the brothers of the whole blood of Mrs. Massey, the mother of the child, and of Mrs. Robert Rives, and of the half blood of Mr. Dudley Sneed.

Defendant also introduced letters of guardianship of said minor, dated 3d October, 1855.

To which plaintiff objected on the ground that they were void.

The Court overruled the objection, and plaintiff excepted.

The Court awarded the custody of the child to the defendant, and plaintiff excepted, and on these exceptions assigns error.

WEST; KIMBROUGH; McCoy & HAWKINS, for plaintiff in error.

DOUGLASS & DOUGLASS, for defendant in error.

*By the Court.*—McDONALD, J. delivering the opinion.

The Constitution of this State has been amended by adding a section to the first Article, declaring that the Legislature shall have no power to change names, nor to legitimate persons, &c., but shall, by law, prescribe the manner in which such power shall be exercised by the Superior and Inferior Courts, and the privileges to be enjoyed. *Acts of* 1855

*and* 1856, *page* 106. The Legislature, at the same session, passed a statute prescribing the manner in which the Courts should exercise the power. *Page* 260. Under this Act, Dudley Sneed applied to the Superior Court of Lee county, making known his desire to adopt John Needham Massey, an infant son of Needham Massey, deceased, and to change his name to John Needham Sneed.

The child's mother was dead. The child having neither father nor mother, no notice of the application was given to any one. The Court passed an order to the effect prayed for, and further establishing the relation of parent and child between the said Dudley Sneed and the said John Needham Massey, by the name of John Needham Sneed, the same as if he had been the natural legitimate child of the said Dudley Sneed.

[1.] The first of the above cases is an application to the Court to rescind the above order. The Court below refused to rescind it, and on that refusal, the case is brought to this Court.

The majority of this Court are of opinion that the Superior Court had the power, under the Constitution and law, to pass the original order, and that it was passed in conformity with both. If the same Court has the power to rescind the order when passed, it is a matter entirely within its discrecretion, and this Court will not attempt to control that discretion, and therefore it affirms the judgment of the Court below.

[2.] I am of opinion that this Court has no jurisdiction of the cause. Conceding the power of the Court below was unquestionable, there was no error in law or equity for this Court to correct, and under the Constitution this Court has no jurisdiction beyond that. The section added to the Constitution prohibits the Legislature from enacting certain laws, or laws on certain subjects, but does not give authority to the Courts to exercise any power over the same subjects, but declares that the Legislature shall prescribe the manner in

which the power to do these things shall be exercised by the Courts. I will not stop to enquire whether this kind of implied power can repeal an express prohibition in the Constitution, to the Courts to exercise Legislative power. If the Courts have power under the Constitution and the law, it is only a branch of Legislative power transferred from the General Assembly to the Courts. If a question should arise in respect to the right of the child to inherit Sneed's estate under the order, a question may be made, whether it be legal or constitutional, in the same manner as a question might be raised as to the constitutionality of a statute passed for the same purpose.

As the opinion which I entertain would leave the action of the Superior Court without affirmance or reversal here, it would stand, as a matter of Course, for whatever it may be worth. The opinion of the majority of the Court must be certified to the Court below, which is a judgment of affirmance.

Judgment affirmed.

[3.] The other case was brought to this Court on the judgment of the Court below on a writ of *habeas corpus*, sued out by Dudley Sneed against Robert Rives, for the purpose of obtaining the custody of the same child, then in possession of the said Rives. Sneed claimed the child under the order of the Court making him the adopted child of the said Sneed. Rives claimed to be his legal guardian under the appointment of the Ordinary of Randolph county, and as such entitled to his custody. His return to the writ, set forth that appointment as his warrant for holding the child. It was insisted, on the other side, that the letters of guardianship were invalid for the want of jurisdiction in the ordinary who made the appointment. At the time of the appointment, the child had beeen for several years and then was, residing in the county of Lee, but jurisdiction was claimed for the ordinary of Randolph county on the ground that it was the request of the deceased father of the child, that at a par-

ticular age, which he had attained, he should go to and live with Robert Rives and his wife. The Court remanded the child to the custody of Rives, and that is the decision which is excepted to.

The residence of the child, however occasioned, was, at the time of the appointment of the guardian, in the county of Lee; and the Ordinary of Randolph had no jurisdiction of the case. *Cobb's Digest*, 286. The letters of guardianship, therefore, conferred no authority on Rives. A majority of this Court is of opinion that Dudley Sneed, in consequence of his established relation of parent to the child, had a right to the custody of his person; even if the letters of guardianship had been good and valid. It is the opinion of this Court that the presiding Judge in the Court below ought to have ordered the child into the custody of Dudley Sneed.

Judgment reversed.