## COMER *v.* THE STATE.

1. For the purpose of construing and ascertaining the meaning of an act passed by the General Assembly, and, after the date of its enactment, in-corporated in the present code of this State, it is legitimate and proper to examine and consider the original act and its title ; and whatever result would follow where the terms of a code section vary materially from those of the act from which it was codified, if such a section is in substantially the same words as those used in the act from which it was taken, the language employed in such section should receive the same construction as would be given thereto upon a construction of the act itself.

2. Applying the rule above laid down to the act of December 20, 1893, "for the protection of union labels, trade-marks and form of advertisement, and providing penalties for counterfeiting the same," that act was designed exclusively for the protection of labels, trade-marks and forms of advertisement adopted by associations or unions of workingmen; and consequently the provisions of sections 252, 253 and 254 of the Penal Code have no application to any other labels, trade-marks or forms of advertisement.

Argued November 15, — Decided November 26, 1897.

Indictment for misdemeanor.   Before Judge Berry.   Criminal court of Atlanta.   October term, 1897.

*Glenn & Rountree* and *J. A. Noyes*, for plaintiff in error.
*James F. O'Neill, solicitor*, and *Rosser & Carter*, contra.

LUMPKIN, P. J.   On December 20, 1893, the General Assembly passed "an act for the protection of union labels, trade-marks and form of advertisement, and providing penalties for counterfeiting the same."   Acts 1893, p. 134.   The provisions of sections 1, 2 and 5 of this statute, in so far as they render certain acts indictable, are incorporated almost literally in sections 252, 253 and 254 of the present Penal Code.   It is certain that, in codifying these sections of the act, no material change in their terms was made.   In other words, the language em-

ployed in the code sections is substantially the same as that employed in the statute, and it is clear that no change of meaning can have resulted from the process of codification. The title to the act does not appear in the code. Dealing with the code sections as they now stand, this court is called upon to determine whether or not they have any application to labels, trademarks or forms of advertisement other than those adopted by associations or unions of workingmen. The question thus presented arose in the following manner: An accusation against D. B. Comer, tried in the criminal branch of the city court of Atlanta, in several counts charged him with certain violations of the above-mentioned sections of the code, in that he made counterfeits of a genuine label of the Carter Medicine Company, and used the same for the purpose of selling certain bottles of pills to which the counterfeit labels were attached, and also used a counterfeit of the genuine label of this medicine company, knowing the same to be a counterfeit. It was not alleged in the indictment that the Carter Medicine Company was an association or union of workingmen, or that any person connected with this company had any connection with any such union or association. The accused demurred to the accusation, on the ground that it contained no sufficient charge of any violation of the criminal laws of this State, the demurrer being predicated upon the proposition that the code sections referred to, and upon which the accusation was unquestionably founded, were not intended to prohibit "the use of counterfeits or imitations of the labels, trade-marks, or forms of advertisement of any person, association or union other than a person, association, or union representing, connected with, or comprising a labor union." The demurrer was overruled, and the accused excepted. The ruling of the trial judge was manifestly made upon the idea that the doing of the several acts alleged against Comer constituted indictable offenses, though the Carter Medicine Company was not a labor association or union of any kind. The court below necessarily held that these sections of the code protected any kind of a company using labels etc. in its business.

We have, after careful deliberation, reached a contrary con-

clusion. As we understand it, the duty. devolves upon us of ascertaining and announcing the true intent and meaning of these code sections with reference to the question above indicated. We wish to state distinctly that we are not now undertaking to deal with the question which would be presented if the terms of these sections varied materially from those used in the act from which they were codified. That is to say, we are not now endeavoring to construe that portion of the act of December 16, 1895, which declares that the code of laws prepared under the authority of the General Assembly by the codifiers therein named " is hereby adopted and made of force as the Code of Georgia ; " or determine what result would follow if in any instance it should hereafter be shown that the codifiers have used language manifestly having a different meaning from that contained in a statute which they were seeking to incorporate into the code. We wish also to explicitly state in this connection that we are not now attempting to pass upon the question whether or not legislative provisions, unconstitutional because embraced in the body of an act and not referred to in its title, would, after insertion in the code, become constitutional because of its adoption in the manner above stated. The questions just referred to are important and far-reaching ; and as they do not, in our opinion, really arise in the present case, we forbear expressing any opinion concerning them. We now undertake simply to interpret the meaning of the code sections as they stand. To this end, we entertain no doubt whatever that it is legitimate and proper to examine and consider, not only the body of the original act, but its title also. Such a course we know with certainty has, by this court, from the time of its organization down to the present date, been pursued times without number in seeking to ascertain the meaning of statutes subsequently incorporated, either literally or substantially, in the various codes. We often turn to Cobb's Digest, to digests antedating it, and to pamphlets of the laws, and examine not only acts but also their titles, with a view to ascertaining the true meaning of language found in the code. The correctness of this assertion is too well known to admit of any doubt or question.

A reading of the title of the act of 1893 now under consideration leads most strongly to the conclusion that the General Assembly did not contemplate the protection of labels, trade-marks or forms of advertisement, which might be adopted by any and all persons or corporations, but those exclusively of associations or unions of workingmen. This seems obvious, for there is absolutely nothing in this title even remotely suggesting any purpose of protecting labels, trade-marks or forms of advertisement, other than those to which the word "union" could properly be applied. The body of the act is upon the same line, and contains nothing whatever to indicate a legislative intention of covering broader ground than that expressed in the title, except that the words "any person" and the words "such person" are introduced into those portions of the act which undertake to declare whose labels, trade-marks, etc., shall not be counterfeited or used. Without setting forth the entire act, a copy of its first section will show how and in what connection the words above quoted are therein used, and this will be sufficient to an understanding of the following discussion. That section reads thus: "Whenever *any person*, association, or union of workingmen have adopted, or shall hereafter adopt for their protection, any label, trade-mark or form of advertisement announcing that goods to which such label, trade-mark, and forms of advertisement shall be attached were manufactured by *such person* or by a member or members of such association or union, it shall be unlawful for any person or corporation to counterfeit or imitate such label, trade-mark or form of advertisement with intent to use the same for the purpose of deceiving the public in the sale of the goods. Every person violating this section shall be punished upon conviction by a fine of not less than one hundred dollars nor more than two hundred dollars."

Since, under the constitution, the title of the act operated to restrict the General Assembly to providing in the body of the act for the protection of union labels, trade-marks and forms of advertisement, it is not to be presumed that the General Assembly intended to do more; for there is no good reason for ascribing to the legislature a deliberate purpose to violate the

organic law of the State. The fact that it could not constitutionally give the act a more extended scope than that indicated by the title, affords, we think, material aid in arriving at the real legislative intention. If, therefore, the act contains language susceptible of two constructions, we should adopt that one of them which is in perfect harmony with the title, and thus free the act as a whole from the imputation of unconstitutionality, instead of adopting the other, when the effect of pursuing the latter course would be to make the body of the act inconsistent with its title, and thus render it open to attack as being unconstitutional. Assuming, then, that the General Assembly in passing this act was undertaking that only which, in view of the title, it could constitutionally do, it is obvious that the word "person," where it first occurs in the above-quoted section, can not properly be held to have been used in its ordinary and usual sense, for this would make it include natural as well as artificial persons. Political Code, § 5. Holding that it does include the former, and bearing in mind the purpose manifested by the title, we would have to treat the act as employing the phrase "any person of workingmen," and this would certainly be an obscure, if not a senseless expression. We are therefore of the opinion that this word was used in a more restricted sense, and means only an artificial person, or corporation. There may be both incorporated and unincorporated associations or unions of workingmen. If, then, we give the word "person" the signification last indicated, and, still keeping the title in view, construe this word as meaning a "corporation of workingmen," we will have both clearness and good sense, and it will simply result that the protection provided for in the body of the act will extend to all organizations of workingmen, including both those which are chartered and those which are not. Our conclusion therefore is, that this is the true construction to be placed on the word "person," as used in the phrases "any person" and "such person," where they occur in the above-quoted section of the act in the places indicated by italics (which are ours), and also where the same are used in a similar connection elsewhere in the act. It is true, of course, that the word "person," as already seen, is capa-

ble of being given a much broader signification; but we can not escape the conclusion that the General Assembly, in pass- ing this act, had in view the sole purpose of protecting the labels, trade-marks, etc.; of labor associations or unions. Accept- ing this as the single design of the act, there is no great strain in placing the above construction upon the words "any person" and "such person." We are not responsible for the awkward- ness or clumsiness of expression appearing in this act, and will have done our duty if we succeed in so enforcing it as to carry out the will of the lawmaking power. Had the intention been to protect the labels, trade-marks, etc., of all persons and all cor- porations, as was insisted in the argument here, the General Assembly would not, we think, have resorted to so·much cir- cumlocution and employed so many words for which it had no use at all. Had its purpose been to pass a law on this subject of universal application, the title could, and doubtless would, have been expressed in the following, or in similar words: "An act for the protection of labels, trade-marks and forms of adver- tisement, and to provide penalties for counterfeiting the same"; and the body of the act could, and would, we are quite sure, have been so written as to omit any reference whatever to associations or unions of workingmen. In this manner, the design indicated by the title above suggested could and would have been expressed in much fewer and clearer terms than are employed in the act as it stands, and there would have been no possible doubt as to the true meaning and purpose of the act.

Unless these views are sound, it is difficult to find an answer to the following question: Why, in the title or in the body of the act, make any reference whatever to a particular kind of. association or union, if the purpose was to protect not only as- sociations of this character, but all other persons, corporate and incorporate? We think it far safer, in arriving at the true in- tention of the General Assembly, to restrict the meaning of the words "any person" and "such person" in the manner above stated, than to throw away and discard as utterly useless and without signification the word "union" in the title, and the words "association or union of workingmen" in the body of the act, these being, in our opinion, the most vital and preg- nant words occurring in it from its beginning to its end.

If the views above expressed are sound, it would not, under the act of 1893, have been a misdemeanor to counterfeit or use the labels of the Carter Medicine Company, the same not being such labels as are referred to in that act; and as the code sections upon which the present prosecution is predicated should be held to have the same meaning in their present place as in the original act, it follows that the court erred in overruling the demurrer to the accusation, the same not charging against the accused any act constituting a violation of those sections, or any of them.

*Judgment reversed. All the Justices concurring.*