## BUTLER v. THE STATE.

1. When the provisions of the act of December 20, 1898 (Acts of 1898, p. 108; Van Epps' Code Supp. § 6676 et seq.), for the protection of labels, trade-marks, etc., are considered in the light of the title to the act, the manifest purpose of the General Assembly was to protect the public from the sale of an article under a counterfeit, imitation, or unauthorized label; and it was immaterial whether the article contained in the package sold was really what the counterfeit imitation or unauthorized label indicated.

2. The evidence authorized the verdict, and no sufficient reason appears for reversing the judgment.

Argued December 17, 1906.—Decided February 16, 1907.

Accusation of misdemeanor. Before Judge Eve. City court of Richmond county. October 24, 1906.

The grand jury of Richmond county preferred a special presentment against Butler, charging him with a violation of the act of December 20, 1898 (Acts of 1898, p. 108), providing for

the protection of trade-marks. The presentment contained five counts. The first charged him with counterfeiting the whisky label of H. & H. W. Catherwood, with intent to use the same for the purpose of deceiving the public in the sale of goods. The second count charged him with counterfeiting the label, with a similar intent. . The third count charged him with using the counterfeit label, knowing the same to be a counterfeit. The fourth count charged him with using an imitation of the label,. knowing the same to be an imitation. And the fifth count charged him with using the name of H. & H. W. Catherwood in and about the sale of goods, without their authority and with intent to deceive the public. The case was transferred to the city court for trial. In that court, when the case was called, the accused made a motion for a continuance, on account of the absence of a witness by whom he expected to prove that the bottles. sold by him with the Catherwood label contained the Catherwood whisky, as indicated on the label. The court overruled the motion to continue, and the accused excepted. The case proceeded to trial, and resulted in a general verdict of guilty. The accused made a motion for a new trial, which contained, besides the general grounds, numerous assignments of error, but all of them raised but one question,—that is, whether a person using a counterfeit or imitation label can escape the penalties of the act above referred to by proving that the goods sold under the counterfeit. or imitation label were the goods as indicated by such label, and that there was no deception so far as the goods themselves were concerned. The judge overruled the.motion for a new trial, and the accused excepted.

The act under which the accused was indicted is in the following language: "An act for the protection of labels, trade-marks,. seals, names, trade-names and forms of advertisement, and providing penalties for imitating or counterfeiting the same, and for other purposes.

"Section I. Be it enacted by the General Assembly of the State of Georgia, that whenever any person, firm, corporation or association shall adopt and use in their business, for their protection,. any label, trade-mark, trade-name, or form of advertisement, it. shall be unlawful for any person, firm, corporation or association to counterfeit or imitate such label, trade-mark, trade-name or

form of advertisement, with intent to use the same for the purpose of deceiving the public in the sale of goods. Every person violating this section shall be guilty of a misdemeanor, and punished therefor.

"Sec. II. Be it further enacted, that every person, firm, corporation, or association, who shall use any counterfeit or imitation of any label, trade-mark, trade-name, or form of advertisement of any person, firm, corporation or association, knowing the same to be counterfeit or imitation, shall be guilty of a misdemeanor, and punished therefor.

"Sec. III. Every person, firm, corporation, or association, who shall use or display the genuine label, trade-mark, trade-name or form of advertisement of any person, firm, corporation or association, in any manner not authorized by law, such person, firm, corporation or association knowing that such use is not authorized, with intent to deceive the public in the sale of goods, shall be guilty of a misdemeanor, and be punished therefor.

"Sec. IV. Be it further enacted, that any firm, person, corporation or association, who shall use the name or seal of any other person, firm, corporation or association, in and about the sale of goods or otherwise, not being authorized to use the same, knowing that such use is unauthorized, with intent to deceive the public in the sale of goods, shall be guilty of a misdemeanor, and punished therefor.

"Sec. V. Be it further enacted, that any person, firm, corporation or association that shall be found guilty of violating the provisions of this Act, or any of them as aforesaid, shall be punished as prescribed in Section 1039 of volume 3 of the Code of 1895."

Section VI repeals conflicting laws.

*C. H. & R. S. Cohen,* for plaintiff in error.

*J. C. C. Black Jr., solicitor, Oswell R. Eve,* and *D. G. Fogarty,* contra.

Cobb, P. J. (After stating the facts.)

In 1893 the General Assembly passed an act entitled "An act for the protection of union labels, trade-marks, and form of advertisement, and providing penalties for counterfeiting the same." The portions of the act material in the present case are contained in the Penal Code, §252. In *Comer* v. *State,* 103 *Ga.* 69, in a

decision rendered November 26, 1897, it was held that the act of 1893 was limited in its operation exclusively to the protection of labels, trade-marks, and forms of advertisement adopted by associations or unions of workingmen, and that one who made and used a counterfeit of the genuine label of a medicine company was not liable to indictment under the act. At the following session of the General Assembly the act under consideration was passed. There can be but little doubt that it was the legislative intent, in passing this act, to bring the labels and trade-marks of others than associations of workingmen within the protection of the law, to the same extent that the act of 1893 protected union labels. The act of 1898 contains practically the same language that was contained in the act of 1893, except that the scope of the act is broadened so as to protect the label, trade-mark, trade-name, or form of advertisement of any person who has adopted and used the same in his business. It is to be noted, in passing, that the act does not require the label or trade-mark to be registered in this State, nor one that is protected under the acts of Congress in reference to trade-marks. If one has adopted and used in his business a trade-mark or label, it then becomes unlawful for any person to counterfeit or imitate the same with intent to deceive the public. In the first, third, and fourth sections, the acts declared unlawful are only such when done with intent to deceive the public in the sale of goods. In the second section these words do not appear, and the use of any counterfeit or imitation label, trade-mark, etc., is declared to be unlawful in any case where the one using it knows that it is a counterfeit or imitation. It is contended by counsel for plaintiff in error that this section should be construed as if these words were embraced therein, but, under the view which we take of the case, this is immaterial even if it can be properly done.

Was the legislative intent, in passing this act, to protect the public against the sale of spurious articles, or was it to protect the public against the sale of any article, spurious or otherwise, which was sold under the name and sanction of a person who had adopted a label or trade-mark? If, as was aptly said by counsel for the State in his argument, the sole purpose of the act was to protect the public in the sale of the spurious article represented to be genuine, there was no necessity for legislation on the sub-

ject, for the law against common cheats and swindlers fully covered all such cases. There can be but little question that the purpose of the act of 1893 was to protect the label of the workingmen's union, without reference to the article upon which it appeared. In other words, the purchaser was protected, by this act, against one who counterfeited a union label and thus probably secured the sale of an article which he could not have sold if it had been known to the purchaser that he was not authorized to use a union label. So, under the present law, the purchaser is entitled to whatever protection in the purchase the genuine label would give. He desires to purchase an article of a certain manufacturer, and he desires to be sure that he receives it from the hand of a dealer who has the confidence of the manufacturer to such an extent that the manufacturer has committed to him the use of his genuine label as a guarantee of the article sold. If the accused sold a bottle of Catherwood's whisky which was genuine, but with a counterfeit label thereon, the purchaser was deceived; for what he desired was Catherwood's whisky from the hands of a dealer approved by Catherwood, and this approval to be evidenced by the possession and lawful use of Catherwood's trademark. The title of the act is "An act for the protection of labels," etc. The provisions of the act must be considered in the light of the legislative intent, as indicated by the title. If it had been, as contended by counsel for the accused, an act which simply protected the public in regard to the quality of the article, the title would be something like this: "An act for the protection of the public in the sale of spurious articles under counterfeit or imitation trade-marks," etc. If section 2 of the act be construed, as claimed by counsel for the accused, as if the words "for the purpose of deceiving the public in the sale of goods" were contained therein, then the construction placed by him upon these words in the different portions of the act would have the effect to entirely defeat the purpose of the act as indicated by its title. If it were allowed as a defense, in a prosecution under the act, that the article sold was really what the counterfeit label represented it to be, the label is no protection whatever. We see no sufficient reason for reversing the judgment.

*Judgment affirmed. All the Justices concur, except Fish, C. J., absent.*