GILMORE *et al. v.* MUTUAL BENEFIT LIFE INSURANCE
COMPANY.

No. 9879.   August 10, 1934.

■

*Reese, Scarlett, Bennett & Highsmith* and *Highsmith & Highsmith,* for plaintiffs.

*Howell, Heyman & Bolding* and *J. B. Moore,* for defendant.

PER CURIAM. ■ The decision in the case of *New York Life Insurance Co.* v. *Gilmore,* 171 *Ga.* 894 (157 S. E. 188), controls this case adversely to the plaintiffs. The parties are not the same, but the two cases involved the same facts and the same issues, except one which is dealt with in the third paragraph, infra.

■ The plaintiffs requested this court to review and overrule the decision in *New York Life Insurance Co.* v. *Gilmore,* supra. The court not being unanimous in favor of reviewing and overruling the case, the request is denied.

■ It is contended that Civil Code (1910), § 3033, as construed in the *New York Life Insurance Company* case, supra, is void, because said section thus construed has the effect of depriv-

ing petitioners of their property and property rights without due process of law, and therefore contravenes the due-process clauses of the State and Federal constitutions. Civil Code (1910), §§ 6359, 6700. "When the parties have been fully heard in the regular course of judicial proceedings, an erroneous decision of a State court does not deprive the unsuccessful party of his property without due process of law, within the fourteenth amendment of the Constitution of the United States. Walker v. Sauvinet, 92 U. S. 90 [23 L. ed. 678]; Head v. Amoskeag Co., 113 U. S. 9, 26 [5 Sup. Ct. 441, 28 L. ed. 889]; Morley v. Lake Shore Railroad, 146 U. S. 162, 171 [13 Sup. Ct. 54, 36 L. ed. 925]; Bergemann v. Backer, 157 U. S. 655 [15 Sup. Ct. 727, 39 L. ed. 845]." Central Land Co. v. Laidley, 159 U. S. 103, 112 (16 Sup. Ct. 80, 40 L. ed. 91). See also 2 Honnold's Supreme Court Law, 846, 850; Herndon v. State, 178 Ga. 832 (174 S. E. 597).

Judgment affirmed. All the Justices concur, Atkinson and Gilbert, JJ., specially.

GILBERT, J., concurring specially. We have been requested to review and overrule the case of New York Life Insurance Co. v. Gilmore, 171 Ga. 894 (supra). That was a unanimous decision of this court, and is binding until it is reviewed and overruled. It requires the unanimous concurrence of all of the Justices to overrule it; and since all of the Justices do not favor overruling the case, the motion is necessarily denied. I dissent from the refusal to review and overrule that case. The question is of such importance that I think it pardonable to give my reasons for such dissent. The case should be overruled for several reasons: First, because the petition filed by Gilmore with the ordinary on May 3, 1910, sought only that he be appointed testamentary guardian. He was already testamentary guardian. There was no mention of nontestamentary property, and no prayer that the petitioner be allowed to deal with such property. An ordinary has no power to appoint a testamentary guardian. This ordinary had no jurisdiction to entertain the petition for any purpose. No legal order could be entered on it, save one of dismissal. It invoked the exercise of jurisdiction with reference to a subject-matter which was outside the realm of the ordinary's court. The order which the ordinary actually entered attempted to appoint Gilmore a general guardian, something he had not asked. There was no pleading before the

court to authorize such an order. The order was void, and the letters of guardianship which followed were void. Second: Even if a judgment by the ordinary appointing a general guardian could be rendered on a petition for the appointment of a "testamentary guardian," in this case such a judgment would be void because rendered without citation or notice of any kind. The record shows that the petition for appointment as testamentary guardian was filed, and the judgment was rendered on the same day; therefore it was impossible for the notice and citation required by law to have been given. For that reason the judgment appointing the general guardian is void. Third: The testamentary guardian did not give bond as required by the act of 1852, codified in Code § 3033. The bond is a condition precedent. Until it is given, one owing money to the minor can not be protected in payment, and the testamentary guardian is not authorized to receive payment.

"The father, if alive, is the natural guardian; if dead, the mother is the natural guardian. The natural guardian can not demand or receive the property of the child until a guardian's bond is filed and accepted by the ordinary of the county. If such natural guardian fail or refuse to give bond and surety, the ordinary may appoint another guardian to receive such property." Civil Code (1910), § 3032. "Every father may, by will, appoint guardians for the persons or property, or both, of his children, and such guardian shall not be required to give bond and security, except in case of waste committed or apprehended, or property coming to the ward from sources other than the father's will, when the ordinary shall require the same. If a testamentary guardian fails to give bond as required, the ordinary may dismiss him as a guardian and appoint another, or may appoint another guardian for the property thus accruing. In all other respects a testamentary guardian shall stand on the same footing with other guardians appointed by the ordinary." § 3033. These two sections of the Code are taken from the act approved January 22, 1852 (Ga. Laws 1851-2, p. 101), viz.: "An act to secure the property of minors against the mismanagement of their guardians, by requiring bond and security. Section 1. Be it enacted by the Senate and House of Representatives of the State of Georgia in General Assembly met, and it is hereby enacted by the authority of the same, that from and after the passage of this act, whenever any child or children shall have

any guardian, by statute appointed, or by the deed or will of the father or mother of said child or children, and any property shall descend to said child or children by virtue of the act of distributions, or of any will, deed, or gift, other than from said parents, it shall be the duty of the court of ordinary, executors, administrators, or trustee, as the case may be, having the control of said property, to withhold said property from said guardian until bond and good security be given, as in other cases of guardianship, to be judged of by the court of ordinary, for the faithful performance of said trust; Provided, that if such guardian shall fail or refuse to give such bond and security, then and in that case said court may appoint some other fit and suitable person to act as such, first compelling said person to give bond and good security, as is now required in other cases of guardianship." The part of the act of January 22, 1852, with which we are here dealing is codified in § 1755 of the first Code, § 3033 of the present Code. If the codifiers of the Code of 1863 intended to make no change in the act of 1852, but merely condensed and simplified it, the adoption of the Code did not affect the law as it stood after the passage of the act of 1852. The old law and the mischief clearly appear from the caption—"mismanagement." The legislature adopted the only adequate remedy—"bond and security." The words "by statute appointed" mean, of course, a natural guardian; the words "or will" refer to testamentary appointment. A life-insurance company having proceeds of a policy due a minor comes within the scope of the term "trustee" as it appears in the act. Clearly such money is property of the minor coming to it by virtue of one of the sources.

Sections 3032 and 3033 of the present Code are identical with sections 1754 and 1755 of the Code of 1863, with these exceptions: The word "security" in § 1754 of the Code of 1863 now appears as "surety," and the word "of" in the fourth line of § 1755 of the Code of 1863 has been omitted from the present Code, § 3033. These may be mere typographical errors, but in any event are wholly immaterial changes. The original codifiers dealt separately with "natural guardians" and "testamentary guardians," and they accordingly split the act of 1852, putting part of it into 1754 and part in 1755. The statement in the act, "It shall be the duty of the [person] having the control of the property to withhold said property from said guardian until bond and good security be

given," is there applied to both natural and testamentary guardians. These words do not appear in § 3033, but their legal equivalent is in § 3032. The codifiers could not have intended to eliminate those words in their application to testamentary guardians, § 3033, and the legal effect of § 3033 is now the same as if it had stated the law in the exact words which appear in the act. Undoubtedly after the passage of the act it was the duty of the person holding the ward's money to withhold it from the guardian until the bond was given. The adoption of the Code did not change this law. To hold otherwise, to say that a testamentary guardian may lawfully receive outside property without having given a bond, is to revive the mischief of the old law which the act of 1852 so wisely remedied. Certainly such a purpose can never be attributed to the men who made the Code of 1863. An ordinary has no power to eliminate the requirement as to bond. If he undertakes to authorize the testamentary guardian to receive the outside property without giving a bond, his act is void. Any letters of guardianship which issue upon such an act are void. Cases involving the effects resulting from the omission by the codifiers of part of the act they codified have been frequently before our courts, and always the construction of code sections in the light of the acts from which they were taken has been approved. "From the foregoing discussion it will be seen that the legislature have power to adopt a code as a whole, but that no arbitrary and inflexible rule has been applied to the determination of whether or not an act or a part of an act omitted from the code was repealed by the adoption of that book. Probably no Procrustean rule can be announced on the subject." *City of Cochran* v. *Lanfair*, 139 *Ga.* 249, 258 (77 S. E. 95); *Comer* v. *State*, 103 *Ga.* 69 (29 S. E. 501); *Lamar* v. *McLaren*, 107 *Ga.* 591 (34 S. E. 116); *Mitchell* v. *Ga. & Ala. Ry.*, 111 *Ga.* 760, 768 (36 S. E. 971, 51 L. R. A. 622), et seq.; *Smith* v. *Evans*, 125 *Ga.* 109, 112 (53 S. E. 589).

Finally it may be remarked that §§ 3032 and 3033, being kindred sections, should be construed together. *Westmoreland* v. *Powell*, 59 *Ga.* 256. Parts of the act of 1852 appear in both sections, and in § 3032 as now written is the statement, "the natural guardian can not demand or receive the property of the child until a guardian's bond is filed and accepted by the ordinary of the county." Clearly it is also the law under the act of 1852 as codified in

§ 3033 that the testamentary guardian can not demand or receive non-testamentary property of the child until the bond is given. Under the act of 1852 the natural guardian as to all property and the testamentary guardian as to non-testamentary property are on the same basis. The mischief in the old law as to both was remedied by the act of 1852, requiring the bond as a condition precedent to receiving the property.

The insurance company could not rely alone on the judgment which was entered by the ordinary on May 3, 1910, or on the letters which followed. It was their duty to go back of the judgment and see that it was founded on a proper proceeding, and that the order entered by the ordinary was one which he had jurisdiction to render. The proceedings show on their face that the judgment was void, because the petition asked for an order which was beyond the power of the ordinary to grant. Such an application is a nullity, and the situation which follows is as though the ordinary enters a judgment of appointment without any application at all and follows it with the letters. In *New York Life Insurance Co.* v. *Gilmore,* 171 *Ga.* 899 (supra), this court correctly stated: "As a matter of law the ordinary can not appoint a testamentary guardian ipso facto, though he might under certain circumstances designate a substitute for one who had been appointed by the testator in his will. The mere naming of a testamentary guardian (or a guardian appointed by will) excludes the appointment of a guardian as such by the ordinary. For this reason, any discussion as to whether Gilmore was legal guardian of Nannette and Winifred Gilmore as to any property outside of that devised by their father's will is precluded." The record on its face showing lack of jurisdiction, the judgment of the ordinary was void. *Jones* v. *Smith,* 120 *Ga.* 642 (48 S. E. 134); *Wash* v. *Dickson,* 147 *Ga.* 540, 544 (94 S. E. 1009); *Stanley* v. *Metts,* 169 *Ga.* 101 (149 S. E. 786); *Callaway* v. *Arnold,* 175 *Ga.* 55 (164 S. E. 773); *Gormley* v. *Watson,* 177 *Ga.* 763 (171 S. E. 280); Code (1910), §§ 5964, 5968.

In *Rusk* v. *Hill,* 117 *Ga.* 722, 730 (45 S. E. 42), it was said, with reference to the appointment of a guardian by the ordinary: "No citation issued, but the ordinary, on the same day, passed an ex parte order granting the application. In so doing the ordinary acted without any shadow of authority." Citing *Torrance* v. *McDougald,* 12 *Ga.* 526. The letters of guardianship recite that the

guardian appointed "has qualified." They do not say he has given the bond. To "qualify" means to take the oath. But this point is of small, if any, importance. No form for letters of guardianship is prescribed in the Code, but section 3047 says that every guardian appointed by the ordinary, before entering on his duties, shall take the oath and give the bond.

The letters of guardianship which issued after the judgment was entered do not help the situation. Letters testamentary, of administration, and of guardianship are all of the same nature. Their authorization lies in the judgment upon which they issue; and if the proceedings back of them are void, they themselves are void, just as a writ of fieri facias is void if the judgment back of it be void. If the court has no authority to entertain the petition asking for the letters, the judgment which attempts to authorize their issuance and the letters themselves are void. The insurance company in the instant cases is no more protected by the letters of guardianship here presented than it would be if the letters had been forged. One dealing with a guardian on the faith of his letters alone, without inquiring into the proceedings on which they issued, assumes the risk of their validity. They are merely credentials, and such a person is charged with knowledge that if they were unauthorized he will not be protected. The ordinary can not enter any order on any proceeding without a written application having been previously made. Civil Code (1910), § 4812. Without such a petition the order is void. *Dupont* v. *Mayo, 56 Ga. 304.*

The net result of the act of 1852 (Civil Code (1910), § 3033) is that when a man by his will appoints a named person guardian for his child and that person accepts the appointment, the guardianship is complete. The person is just as certainly a guardian as is an ordinary guardian appointed in due course by a formal order and judgment of the ordinary under §§ 3046 and 3047, after petition, citation, and bond. But there is a limitation on the powers of such testamentary guardian. He can not receive non-testamentary property until he gives a bond. And bond is the only requisite. No petition is necessary, no citation, no judgment.

My attention has been called to the case of *Tucker* v. *Harris,* 13 *Ga.* 1 (58 Am. D. 488), as authority contrary to this opinion. I do not so construe it. In that case the court was dealing with the appointment of an administrator where there was nothing on the

face of the record to show lack of jurisdiction. The court ruled: "Nothing is to be presumed in favor of jurisdiction; but if jurisdiction is shown, everything will be intended in favor of the judgments of courts, and they must be taken to have judged rightly, unless the contrary appears." Moreover, Judge Warner did not preside in the case, having been of counsel for one of the parties. Even if the case contained any ruling contrary to the views herein expressed, the judgment was by two Judges.

The cases most relied on by the insurance company will now be discussed. *Sharpe* v. *Hodges,* 121 *Ga.* 798 (49 S. E. 775): This decision is not binding in its enunciation of any rule of law further than was necessary to cover its own particular facts. These were the facts: Certain letters of administration were offered in evidence. They recited every jurisdictional fact essential. A witness was offered to show that the alleged administrator had not taken the oath. It was an effort *by parol testimony* to contradict the record, and was of course a collateral attack on the judgment appointing the administrator. Not a hint that the *record* of the application for administration was not in proper shape, or that there was anything in the record which showed on its face that the ordinary was without power to issue the particular letters prayed for. There was no suggestion that the ordinary had issued letters vitally different from those prayed for, which is what happened in the case at bar. The case was correctly decided, but the decision goes beyond what was necessary in deciding it.

*Cuyler* v. *Wayne,* 64 *Ga.* 78, was a somewhat complicated ejectment suit. The second headnote is: "In all cases of the appointment by the ordinary of the guardian of a minor—whether the clerk of the superior court or some other person—bond should be required; but the grant of letters without taking bond would not be void as against a bona fide purchaser under the guardian, without notice of the want of the bond." There had been a partition sale of the property, and to the partition proceeding the guardian to whom letters had issued but who had given no bond was a party. At the sale the defendant's intestate had purchased. It was admitted that the deed made in pursuance of this sale conveyed good title if the sale was legal and binding. See p. 82. There had further been an equitable suit in the United States court relative to the property, and to this suit the ward in point was a party, and in

her answer she stated that she was willing to abide by the former partition. On p. 87 Chief Justice Warner said: "In relation to the first question, whether the sale of the property for partition was legal and valid or not, the plaintiffs, in their answer to the bill filed against them and the purchaser of the property by John M. Cuyler, ratified and confirmed it. . . The bill was served upon Estelle Cuyler" (the ward in point), "and she is therefore bound by it." This is the real basis for the decision of the case, head-notes 1 and 2. The opinion then states: "We might rest our judgment in this case right here; but as the question was discussed on the argument as to whether a guardian was required to give bond and security, especially when the clerk of the superior court is appointed guardian for minors by the ordinary, or whether it is discretionary with the ordinary to require bond and security, we will express our opinion on that question. In our judgment the law requires that bond and security should be given in all cases on the appointment of a guardian by the ordinary. Code, § 1812 [1910, § 3047]. But the grant of letters of guardianship without taking bond, though erroneous, would not make the grant of the letters void as against a bona fide purchaser who had no notice that a bond had been given." That case did not deal with a guardian's right to receive non-testamentary property without first making a bond approved by the ordinary. In the present case the court had no jurisdiction over the subject-matter, which was an application to appoint a *testamentary* guardian; and that is the point which distinguishes the case at bar from *Cuyler* v. *Wayne*. In the guardianship proceeding involved in the *Cuyler* case there had been an application which the ordinary had jurisdiction over, that is to say an application for appointment of a general guardian for a ward who had no guardian.

In *Bell* v. *Love*, 72 *Ga.* 125, although the application for guardianship was within the jurisdiction of the court, the ordinary granted it at chambers instead of at the regular term as required by the Code. Guardianship held void for all purposes. The ordinary did not have the power to entertain it at the time he did entertain it. The same guardianship was involved in *Dooley* v. *Bell*, 87 *Ga.* 74 (13 S. E. 284). These *Bell* cases go further than is required in the case at bar; for here the ordinary did not have jurisdiction to entertain the application at all. The *Cuyler* and

*Sharpe* cases just considered deal with the kind of guardian which the ordinary can appoint. They can not possibly have any application to a testamentary guardian who proposes to receive nontestamentary property. With that appointment the ordinary has nothing to do, and the sole requisite of authority is the statutory requirement that the bond shall be given. Whether an ordinary can or can not legally issue letters to a guardian he himself is appointing, where no bond has been given, can not affect the proposition that a guardian appointed by the will of a dead man can not lawfully receive outside property until he gives the bond.

The foregoing discussion leads to the following conclusions:

■ An application to the ordinary for appointment of a testamentary guardian is but a piece of waste paper. It calls for the exercise of a jurisdiction which the ordinary does not possess. Any order, save one of dismissal, which issues on it is void. Any letters which follow it are void.

■ One dealing with a purported guardian on the faith of the letters he holds must at his peril look to the validity of those letters. Where lack of jurisdiction appears on the face of the record, the judgment is void and protects no one. If they have issued as of general guardianship where no proper application was filed and no citation was published, they are void. If they issued as of testamentary guardianship attempting to authorize a testamentary guardian to receive and administer non-testamentary property, and if no statement was made in the application for them as to the existence of non-testamentary property, and no bond was given to protect such non-testamentary property, they are void. As bearing on some of the principles involved, reference is made to the following: *Juslices* v. *Selman,* 6 *Ga.* 432 (4) ; *Rives* v. *Sneed,* 25 *Ga.* 612 (2) ; *Fischesser* v. *Thompson,* 45 *Ga.* 459, 463; *Fussell* v. *Dennard,* 118 *Ga.* 270 (45 S. E. 247) ; *Walkins* v. *Gilmore,* 121 *Ga.* 488 (4) (49 S. E. 598) ; *Dame* v. *McGowen,* 164 *Ga.* 332 (138 S. E. 785) ; *Callaway* v. *Arnold,* 175 *Ga.* 55, 60 (164 S. E. 773) ; *Jordan* v. *Smith,* 5 *Ga. App.* 559 (63 S. E. 595).