HOLLOWAY et ux v. WETZEL

No. 5572. Decided May 28, 1935. (45 P. [2d] 565.)

*O. K. Clay,* of Salt Lake City, for appellant.

*L. A. McGee* and *A. S. Horsley,* both of Price, for respondents.

EPHRAIM HANSON, Justice.

This is an action brought by plaintiffs on a promissory note alleged to have been executed and delivered to them by A. D. Hadley and Elizabeth Hadley bearing date December 12, 1923, and payable two years after date. In the complaint it is alleged that the note was lost and could not be produced. It is further alleged that a payment of $216 was made October 22, 1927, and $63.50 on February 27, 1928, and that the interest was paid up to January 12, 1926, the last payment of interest being made January 15, 1927. The defendant, as the administrator of the estate of Elizabeth Hadley, deceased, denied that she executed the note; that she ever made any payments thereon; and that the note was lost, and denied that any note signed by her was ever in existence. Defendant further alleged that the cause of action was barred by the provisions of R. S. Utah 1933, 104-2-22, 104-2-23. The action, as shown by the files, was commenced August 22, 1933. The evidence of the plaintiff, so far as pertinent to the issues herein decided, may be summarized as follows: A. D. Hadley, in 1923, and to the time of his death in March, 1927, was engaged in the mercantile business in Price, Utah, under the name of the Price Garment Company. Shortly after his death Mr. Lawson, a representative of the Inter-Mountain Association of Credit Men of Salt Lake City, came to Price and requested Mrs. Hadley, as the wife and sole heir of A. D. Hadley, to make an assignment of the assets of the Price Garment Company to the association for the benefit of creditors of said company. A printed form of assignment was filled in showing an agreement "between Elizabeth D. Hadley, (sole heir of A. D. Hadley, deceased), of Price, Utah, doing business under the name of A. D. Hadley at Price, Utah, party of the first part" and the association as party of the second part. The assignment was signed, "Sole heir of A. D. Hadley, Deceased. Elizabeth Hadley." At the time the arrangement was made, from data furnished by Mrs. Hadley, Lawson prepared a list reciting and purporting to be a "list of creditors in the

Matter of A. D. Hadley, Deceased." The list was not complete, and as Mrs. Hadley did not know all the creditors of Mr. Hadley, she refused to sign. It did contain the following: "E. H. Holloway, $2000.00 note." Lawson testified that Mrs. Hadley had told him the money was advanced at two different times, totaling about $2,000, and that Mr. Hadley and Mrs. Hadley signed it. There is no other direct evidence that Mrs. Hadley signed the note. Mr. Holloway testified he requested her signature. Mrs. Holloway testified that she saw Mr. Hadley sign the note at Hadley's store, and they then went to Hadley's home, but what transpired there is not revealed. Mrs. Holloway testified that she kept a record of the dates, which record showed payments of interest by Mr. Hadley at various times, the last being made January 15, 1927. The association, as assignee under the assignment heretofore referred to, paid to plaintiffs $216 on October 22, 1927, $63.57 February 22, 1928, and $33.66 on October 18, 1928. No payment was ever made at any time by Mrs. Hadley, nor was there any evidence to show that she knew that any payment had been made.

The defendant offered no evidence, and the court entered judgment for the plaintiff as prayed. In its findings of fact, the trial court found that the defense of the statute of limitations "was not argued or contended for before the court and was considered by the court as having been abandoned." There is nothing in the record to justify such a finding, unless it be assumed from the fact that the defendant rested his case without introducing any evidence. In their brief, plaintiffs seem to adopt the view that defendant would be obliged to put in evidence in respect to the question of the statute of limitations or be deemed to have waived such defense. While it is true that the burden of proof is upon the party pleading the statute of limitations to establish that the alleged claim is barred, still, if the evidence of the plaintiff shows the action to be barred, there is no necessity for any further evidence on the question required on the part of the defendant. It must be obvious

that the defendant is not called upon to prove a defense already proved by the plaintiff in order to avoid an assumption that the defense has been abandoned. The law does not require the doing of a useless act. It must be remembered also that this is an action against the administrator of the deceased person's estate. Under R. S. 1933, 102-9-10, an administrator cannot waive or abandon the statute of limitations, nor can the court, in passing upon a claim of a decedent, approve one against which the statute has run. This court has so held in the case of *Gulbranson* v. *Thompson,* 63 Utah 115, 222 P. 590, and a failure to plead the statute cannot be of any avail to the party claiming against the estate. If the evidence disclosed that the claim is barred, it must not be allowed, and no judgment can be entered thereon whether the statute is pleaded or not. *Hawkley* v. *Heaton,* 54 Utah 314, 180 P. 440, and cases there cited. The findings of the court above referred to therefore, cannot be sustained, and the question still remains as to whether the evidence shows the claim sued upon was barred by the statute.

This action was commenced August 22, 1933. The note sued upon is alleged to have become due December 12, 1925. It would be barred if no payments, acknowledgments, or new promises were made, six years thereafter, being December 12, 1931. Under the terms of the note as alleged in the complaint, the makers would be jointly and severally liable. The evidence discloses that no payments were made by Mrs. Hadley. To take the claim out of the bar of the statute plaintiffs rely, first upon the payments made by Mr. Hadley, and, second, upon the payments made by the assignee association. There is no evidence to show when Mrs. Hadley died, so that it is impossible to say whether R. S. 1933, 104-2-38 would be applicable, assuming Mr. Hadley's payments would toll the statute as to Mrs. Hadley.

We are clearly of the opinion, however, that the payments made by Mr. Hadley would not so toll the statute. The great weight of authority is to the effect that a part payment of

either principal or interest by one of two or more joint and several obligors does not of itself suspend the running of the statute of limitations against the other co-obligors. See an exhaustive annotation to the case of *Langlie* v. *Loge*, 59 N. D. 399, 230 N. W. 211, 71 A. L. R. 373. The reason for this rule is that joint and several or joint obligors are not necessarily the agents of each other and are not authorized to suspend the running of the statute, one as against the other, merely because of that relationship; that the payment contemplated by the statute as tolling its effect must be one made by the party himself or by some one authorized by him to make it. The reason is well illustrated by the following language from the case of *Marienthal* v. *Mosler*, 16 Ohio St. 566, at page 570, in construing a statute identical in language to our section 104-2-45:

"It will be seen, however, that the same effect is given to such part payment as is given to a written promise 'signed by the party to be charged thereby.' It would seem, therefore, from analogy, that the payment must be made by the party to be affected thereby, or by an agent authorized for that express purpose. In the contemplation of the statute, the part payment of a debt is regarded as evidence of a willingness and obligation to pay the residue, as conclusive as would be a personal written promise to that effect. It could not, then, have been intended to give this effect to payments other than those made by the party himself, or under his immediate direction. Surely nothing short of this would warrant the assumption of a willingness to pay equal to his written promise to that effect."

It is stated in *Elmore* v. *Fanning*, 85 Kan. 501, 117 P. 1019, 1020, 38 L. R. A. (N. S.) 685:

"A payment, to toll the statute, must be made under such circumstances as to amount to an acknowledgment of an existing liability."

There is no evidence whatever to show that Mrs. Hadley knew of the payments made by Mr. Hadley or consented thereto or had anything to do with them. It must follow, therefore, that these payments did not suspend the operation of the statute as to her.

It is strongly urged that the payments made by the assignee association under the assignment heretofore referred to tolled the statute, as the assignee must be regarded as the agent of Mrs. Hadley, as she authorized the payment under the terms of the assignment. While certain distinctions might be drawn from the fact that in making ▐ the assignment Mrs. Hadley was simply assigning the assets of her husband's business for the benefit of his creditors, assuming the right to do so because she was his sole heir, and this was relieving his creditors of the necessity of filing claims in probate proceedings, so, in reality, was not making an assignment for the benefit of his creditors, still, we prefer to decide this matter upon the broad proposition that a payment made by an assignee for the benefit of creditors of the assignor does not of itself toll the statute. Upon the question now under consideration, the court, in *Marienthal* v. *Mosler*, supra, said:

"It is claimed that the assignee was the agent of the defendants, and that they are, therefore bound by his acts. This position is not tenable upon either reason or authority. Did an assignee occupy that position, it would be within the power of the assignor to exercise a control over his acts, and to remove him at his pleasure. On the contrary, the debtor has no control over him; he can neither compel him to admit or reject a claim presented for allowance; nor can he enforce dividends and payments otherwise than may be done by any one having an interest in the fund. The assignee, when he accepted the trust, became in law (as he is called in the instrument of assignment) a trustee for both debtor and creditor, rather than the agent of either; and the law imposed upon him the duty of carrying out the trust in the proper appropriation of the assets of the assignors to the payment of their existing debts. The assignment conferred no power upon the assignee, either to create new debts against the assignors, or to extend their legal obligations to their creditors."

To the same effect is *Parsons* v. *Clark*, 59 Mich. 414, 26 N. W. 656, 658, wherein the court said:

"But it must be remembered that payments made by a debtor to his creditor are not always evidence of a promise to pay the balance of the debt. If the debtor, when he makes the payment, expressly refuses to

pay the balance, or makes such payment under circumstances that repel the presumption of such promise, no inference can in such case be drawn of a promise to pay the remainder. It is the duty of an assignee to pay and discharge the debts of his assignors, so far as he is enabled to do so, from the assets, and he has no authority in virtue of his trust to renew, revive, or continue in force the undischarged portion thereof, or to bind his assignor by either an express or implied promise of payment. The right of action by the creditor against the debtor is not barred by the assignment. He may bring his action, notwithstanding the assignment, as soon as it is made. The assignment, therefore, did not operate to prevent the statute from running. No doubt the payments were made by the express authority of defendants, but they were made by a person under circumstances which repelled the presumption of a promise by the assignors to pay the balance.

"In effect the assignors said, 'We owe Mr. Parsons about seventy dollars, and we are unable to pay him in full; we place all our property not exempt from execution in your hands, which we authorize you to convert into money, and pay it over to him to apply on such indebtedness.' Payments made under these instructions afford no just grounds to infer any intent to renew the promise of payment, or to extend the time within which they were originally bound to pay."

As further sustaining the foregoing views, see *Pickett* v. *King*, 34 Barb. (N. Y.) 193; *Pickett* v. *Leonard*, 34 N. Y. 175; *Kilton, Warren & Co.* v. *Providence Tool Co.*, 22 R. I. 605, 48 A. 1039; *Brown* v. *Latham*, 58 N. H. 30, 42 Am. Rep. 568; *Whitney, Clark & Co.* v. *Chambers*, 17 Neb. 90, 22 N. W. 229, 52 Am. Rep. 398; *Security Bank* v. *Finklestein*, 160 App. Div. 315, 145 N. Y. S. 5; *American Woolen Co. of New York* v. *Samuelsohn*, 226 N. Y. 61, 123 N. E. 154; *Berteloot* v. *Remillard*, 130 Wash. 587, 228 P. 690; note to 25 N. W. 860; *Robinson* v. *McDowell*, 133 N. C. 182, 185, 45 S. E. 545, 98 Am. St. Rep. 704; *Shelby Nat. Bank* v. *Hamrick*, 162 N. C. 216, 78 S. E. 12; 17 R. C. L. 946, § 310.

The case of *Letson* v. *Kenyon*, 31 Kan. 301, 1 P. 562, holds, by a divided court however, that a payment by an assignee for the benefit of creditors does toll the statute as to the assignor. While our statute is taken from Kansas and the

decision of that court above referred to was made before the adoption of that statute by our Legislature, it appears to us that the question involved was not one concerned with construing the statute as such. The Kansas court had already decided in the case of *Steele* v. *Souder,* 20 Kan. 39, that to toll the statute the payment must have been made by the party to be charged or by his authorized agent. The case of *Letson* v. *Kenyon,* supra, recognized this principle and simply decided that an assignee for the benefit of creditors was such an authorized agent. It is well to point out also that the opinion of Judge Brewer relies upon the case of *Barger* v. *Durvin,* 22 Barb. (N. Y.) 68, a case which was expressly overruled in the cases of *Pickett* v. *King* and *Pickett* v. *Leonard,* supra. The *Letson Case* was brought to the attention of the court in the case of *Whitney, Clark & Co.* v. *Chambers,* supra, and the court expressly refused to follow it.

This court has heretofore held that it is not bound to accept the construction placed upon a statute by the courts of the state from which it was adopted. *State* v. *De Weese,* 51 Utah 515, 172 P. 290; *Ashton-Jenkins Co.* v. *Bramel,* 56 Utah 587, 192 P. 375, 11 A. L. R. 752. We are convinced that the decision in the case of *Letson* v. *Kenyon,* supra, is contrary to the overwhelming weight of authority, and is unsound in principle, and therefore we must decline to follow it.

It is argued by plaintiffs that in making the assignment and the list of creditors attached thereto, Mrs. Hadley made a written acknowledgment of the note in question. With this we do not agree. The most that she did was to acknowledge that this was one of Mr. Hadley's debts which should be paid out of his assets. Nowhere did she list this note as her debt or make any written acknowledgment thereof as being her indebtedness. Because she was his sole heir and so could dispose of his property that fact did not render her liable for his debts.

It follows from what has been said that the claim sued upon was barred by the statute of limitations, and so judgment in this action was erroneously entered thereon. It is unnecessary, therefore, to pass upon any other questions involved.

The judgment of the lower court is reversed, with directions to grant a new trial. Appellant to recover costs.

ELIAS HANSEN, C. J., and FOLLAND, MOFFAT, and WOLFE, JJ., concur.