THOMPSON et al. v. INDUSTRIAL COMMISSION et al.

No. 6221.  Decided July 23, 1940.  (104 P. 2d 629.)

*George W. Worthen,* of Provo, and *H. Arnold Rich,* of Salt Lake City, for plaintiffs.

*Joseph Chez,* Atty. Gen., and *S. D. Huffaker,* Asst. Atty. Gen., for defendants.

PRATT, Justice.

The Thompson-Markham Company under contract with the United States, is constructing a 15,000 foot tunnel. It is to be used for the conveyance of water from the Deer Creek Reservoir in Utah County to users in Salt Lake County. These contractors work their men on an eight hour

shift, counted at the place of employment within the tunnel rather than from the time the men "go under ground until they return to the surface." The Industrial Commission of this state threatens the contractors with prosecution under the following section of our statutes (Sec. 49-3-2, R. S. U. 1933, as amended by Chapter 59, Laws of Utah, 1937) :

"49-3-2. *A Day's Work—Mines and Smelters.*

"The period of employment of working men in smelters and all other institutions for the reduction or refining of ores or metals, shall be eight hours per day, and the period of employment of working men in all *underground mines or workings* shall be not more than eight hours per day, such eight hour period shall be computed from the time men go underground until they return to the surface, except in cases of emergency where life or property is in imminent danger; provided, however, when underground hoists or pumps are in continuous operation, hoistmen and pumpmen employed on such hoists or pumps may be permitted to be underground not to exceed eight hours and thirty minutes. Any employer who violates any of the provisions of this section is guilty of a misdemeanor." (Italics added.)

The contractors seek to have the Commission prohibited from enforcing that section as against them. The question in issue is: Does "underground mines or workings" have reference to mining operations solely, or does it include all kinds of underground operations?

Section 6 of Article XVI of our Constitution reads:

"Eight hours shall constitute a day's work on all works or undertakings carried on or aided by the State, County or Municipal governments; and the Legislature shall pass laws to provide for the health and safety of employees in factories, smelters and mines."

Evidently the people of this state thought that as to labor in those three forms of employment, the Legislature should be directed to enact laws pertaining to the health and safety of employees. Whether or not other forms of employment should receive legislative attention along the same line was left for the Legislature to determine under its general power to enact laws for the public health, welfare, and safety.

It seems reasonable to say, then, that such an act as Sec. 49-3-2, as amended, dealing with the health of individuals employed in underground mines, was passed in conformity with the requirements of the above constitutional section. However, it would not be inconsistent on the part of the Legislature to think: Well, as long as we are fixing hours in occupation designated by the people as injurious to the health of the employees, we might as well include other occupations, though not so designated, which also are injurious to their health; and, acting upon such thought include all kinds of underground work. But, were they carrying out such a thought in enacting Sec. 49-3-2 above?

Title 49, R. S. U. 1933 (of which 49-3-2 above is the 2nd section of the 3rd Chapter) deals generally with labor legislation. It is entitled "Labor." It is divided into various chapters and sections each of which has its individual title. Example: Chapter 4; "Employment of Women and Children," Sec. 1, thereof: "In Mines and Smelters Forbidden." The short form of citation of that title, chapter and section would be: "Section 49-4-1." The same can be said of Sec. 49-3-2 in question. It is entitled (Title 49) "Labor" (Chapter 3) "Eight-Hour Law" (Section 2) "In Mines and Smelters." So far, then, as the titles of the Revised Statutes are concerned, there is every indication that Sec. 49-3-2 is limited to mines and smelters—two of the forms of occupation covered in Sec. 6 of Article XVI of the Constitution. The form of these statutes has been approved by the Legislature. (Chap. 76, Laws of Utah 1933).

Let us now consider the wording. The Amendment of Sec. 49-3-2, R. S. U. 1933, by Chapter 59, Laws of Utah 1937, is entitled:

"An Act Amending Section 49-3-2, Revised Statutes of Utah, 1933, Relating to the Period of Employment of Working Men in Underground Mines or Workings and in Smelters and All Other Institutions for the Reduction or Refining of Ores or Metals, Providing That the Period of Employment for Underground Mines or Workings Shall Be Eight Hours Per Day."

In the body of this title as well as in the body of the amended Section 49-3-2, first quoted in this opinion, we find these words: "Smelters," "reduction," "refining," "ores," "metals," "mines,"—all connected with mining operations; and "hoists" and "pumps"—consistent with mining operations. The Commission contends that "workings" is of broader meaning than as applied to mining operations.

That, generally, is probably true; but when included in a section all other words of which have a meaning applicable to and/or consistent with such operations, is there justification for giving it that broader meaning? If it were capable of only that one interpretation, probably the answer should be: Yes. But "workings" has a meaning consistent with mining operations. See Words & Phrases, First Series, Vol. 8, p. 7522: "The term 'workings,' as used in the act relating to mines and mining, includes all the excavated parts of a mine, those abandoned as well as the places actually worked." P. & L. Dig. Laws Pa. 1894, Vol. 2, col. 3110.

A Glossary of the Mining and Mineral Industry by Albert H. Fay (Department of the Interior Bulletin No. 95) gives the following definitions:

"Working: The Spanish and the English terms are synonymous in meaning and alike in application. A working may be a shaft, quarry, level, opencut, or stope, etc. (Raymond)1 Usually used in the plural. See Workings."

"(Scot.) A name given to the whole strata excavated in working a seam."

"Workings: Any species of development; usually restricted in meaning to apply to the breasts, etc., in contradistinction to the gangways and airways. Often used in a broader sense to mean all the underground developments. (Chance)."

That being the case, it is hard to see any justification for a broader interpretation except that greater social justice might be accomplished. Such exception is, however, for the Legislature to determine and not for the courts.

The conclusion seems inescapable that Sec. 49-3-2, as amended, has no application to other than mining and smelting operations. Such a conclusion conforms to the history of the enactment from its inception in Chapter 72, Laws of Utah 1896; through the *State of Utah* v. *Holden* cases, reported in 14 Utah 71, 46 P. 756, 37 L. R. A. 103; 14 Utah 96, 46 P. 1105, 37 L. R. A. 108; and *Holden* v. *Hardy*, 169 U. S .366; 18 S. Ct. 383, 42 L. Ed. 780; through the revision of the Statutes of 1898, Section 1337, Chapter 2, Title 36; through the Compilation of 1907, Title 43, Chap. 2; the Compilation of 1917, Title 58, Chap. 3; and into the Revised Statutes of 1933, as amended by Chapter 59, Laws of Utah 1937. Throughout all these years, after the first, the title of the particular section has been carried as "In Mines and Smelters." In 1896 the law was entitled:

"An act regulating the hours of employment in underground mines and in smelting and ore reduction works."

The wording of the section has changed slightly from time to time, but one is impressed in reading that history that the Legislature did not have in mind any form of occupation other than mining and smelting.

The alternative writ of prohibition is made permanent.

MOFFAT, C. J., and LARSON, and McDONOUGH, JJ., concur.

WOLFE, Justice.

I concur with reluctance but I see no escape from the court's decision. If it were not for the title to Chap. 72, Laws of Utah 1896, the language of the body of the act could be construed harmoniously to reach a result socially desirable. Not only is it desirable to protect *miners* working in underground mines but it is equally desirable to protect others working in underground workings not connected with mines. It is not only desirable to protect *all* who so

work but socially inequitable to protect some but not all. Two parallel tunnels are being bored through the same mountain, one to free a mine of water, and another unconnected with mines to carry water for municipal purposes. Workmen in the first case can only be worked 8 hours from portal to portal. Workmen in the second must be underground for their coming and going time in addition to their eight hours at work. This seems inequitable. But Sec. 6, Art. XVI of our Constitution imposed an obligation on the Legislature to provide for the health and safety of employes in factories, smelters and mines. It was in pursuance of this mandate that Chap. 72, Laws 1896 was passed. The *body* of the Act read "in all underground mines *and workings.*" By itself this language would permit a construction which would take in all underground workmen, but for the *title* of the act which read: "An Act Regarding the Hours of Employment in Underground Mines and in Smelting and Ore Reduction Works." This certainly seems to restrict "underground workings" in the body of the Act to mines, for the title is an aid to the construction of the body of the Act. It limits the sphere of the Act. The words of the Act may be restrained or qualified by the title. *Allen* v. *Commissioners of Taxation,* 57 N. J. L. 303, 31 A. 219; *Lacey* v. *Palmer,* 93 Va. 159, 24 S. E. 930, 31 L. R. A. 822, 57 Am. St. Rep. 795; Lewis' Sutherland on Statutory Construction 2nd Ed. Vol. 1, Secs. 135 and 120.

The body of Chap. 72, Laws of Utah 1896, was carried into the 1898 Revision without change in the wording but the title was dropped. Unless it can be said that dropping of a restrictive title itself shows an intent to enlarge the meaning of the words in the body of the Act which were thitherto restricted by the title, the intent of the Legislature in the revision and in all future compilations and revisions would be the same. Nothing could be said to have changed it. The legislative intent cannot be considered as being changed because, if the Legislature had had knowledge of certain

facts or certain needs or of a different interpretation of the law, it might have been motivated to legislate in accordance with those facts, needs or interpretation. If it legislated in view of one situation its intent cannot be expanded because it supposedly should or would have legislated differently had it realized that the situation was different than it thought it was. *Van Cott* v. *Tax Comm.*, 98 Utah 264, 96 P. 2d 740. I know of no principle of construction which would say that in a Revision the wording of the original Act which, but for a restrictive title in the original act, might have a wider meaning which would bring about a desirable social purpose, takes on the desired wider meaning simply because the title is dropped. The wording of the original act is stamped with a meaning derived from the title. The words still have the content of this meaning, although the restrictive title is dropped. *Comer* v. *State*, 103 Ga. 69, 29 S. E. 501. Generally, in Revisions and Compilations, main titles contained in the original acts are dropped and new titles more fitting to the new assembling of the statutes are adopted.