## JOHNSON v. JOHNSON. WOOD v. WOOD.

Nos. 7271, 7272. Decided June 27, 1949. (207 P. 2d 1036.)

See 27 C. J. S., Divorce, sec. 169.

*Cline, Wilson & Cline,* Milford, for appellants.

*Orville Isom,* Cedar City, for respondent.

PRATT, Chief Justice.

These two cases have been consolidated for the purpose of appeal since they involve a single question and differ very little factually.

The appeal in each instance involves the denial of a petition to set aside and vacate an interlocutory decree of divorce, where such petition was filed after the expiration of the interlocutory period. In each instance the basis of the petition is a resumption of marital relations by the parties during the interlocutory period and a continuation of such relationship thereafter. In the one case *(Wood* v. *Wood)* the husband and wife joined in the petition. In the other case *(Johnson* v. *Johnson)* the wife only filed the petition, but accompanied it with a stipulation in which both parties joined to the effect that the trial court should set aside the interlocutory decree. The petition in the latter

case recites that this stipulation was entered into at a time before the six months interlocutory period had expired, but that the plaintiff through inadvertance and neglect failed to place it in the hands of her attorney and instruct him to file it in order that the interlocutory decree be set aside, at a time before it became final. There appear to be no rights of third persons involved.

The single question presented by these appeals is whether the court should have set aside the decree of divorce in each case on the basis of the petitions before it indicating that during the interlocutory period in each instance the parties had become reconciled and resumed marital relations, and have so continued to the present.

The Utah Statutes providing for an interlocutory decree are as follows:

Section 40-3-6, U. C. A. 1943:

"If after the hearing of any divorce cause the court is of the opinion that the divorce ought to be granted to either person, a decree shall be entered granting to such person a divorce; but the decree shall specifically provide that it shall not become absolute until the expiration of six months from the date of its entry."

Section 40-3-7, U. C. A. 1943:

"The decree of divorce shall become absolute at the expiration of six months from the entry thereof, unless an appeal or other proceedings for review are pending, or the court before the expiration of said period for sufficient cause upon its own motion or upon the application of any person, whether interested or not, otherwise orders."

The interlocutory decree is the only decree which is contemplated or necessary under the statutes set out above, and the expiration of six months without appeal or other proceedings for review renders it final automatically, and the marital relationship, which continues in existence until that time, terminates. See: *Allred* v. *Wood*, 72 Utah 427, 270 P. 1089. Neither party need take any affirmative action after the interlocutory decree is

entered, in order that the marriage be dissolved at the end of that period. In this respect Utah statutes differ from those in some states having interlocutory decree provisions which require an entry of final decree, either at the instance of a party to the divorce, or by the court on its own motion.

Our attention is called to the case of *Githens* v. *Githens*, 78 Colo. 102, 239, 1023, 1024, 43 A. L. R. 547, as supporting the view that appellants take in this case. That case was one in which both parties had joined in a petition to vacate a final decree of divorce, indicating to the court that they had become reconciled during the interlocutory period, and had continued to live together as husband and wife for several years before petitioning the court. The contention was advanced that the court was powerless to vacate the original divorce decree by virtue of Section 81 of the Colorado Code of Civil Procedure, since more than six months had elapsed from the entry of the decree. Section 81 provided that application to reopen or vacate a judgment must be made within six months after adjournment of the term of court. In this case many years had elapsed. The court stated that even assuming that Section 81 was applicable, still the contention advanced was not tenable. The court sustained the decree of annulment of the original divorce in the following language:

"The states of the Union generally encourage the permanency and continuity of the marital relation. They look with disfavor upon divorces. No decree of divorce is maintainable except upon one or more of the statutory grounds. In the case before us the parties personally appeared in court and joined in the application to have the absolute decree of divorce theretofore entered set aside and held for naught. It was not against, but in consonance with, public policy to grant such relief. The parties in their written application expressly say that they had never recognized the decree of divorce but had been and were living together as husband and wife from the time of its rendition. No rights of third persons are involved. While we have no statute upon the subject—at least our attention is not called to any—the court had inherent jurisdiction at any time after the decree was rendered, and where only the rights of the parties themselves are concerned, to set aside and annul this decree of divorce, when the parties, as here, joined in the written request therefor.

Indeed, the acts and conduct of the parties, according to their own statement in legal effect, was a common-law marriage entered into after the decree of divorce was granted.

"There is nothing in our laws to prevent divorced parties from being remarried. The annulment of this divorce decree is in legal effect merely legalizing and ratifying the acts of the parties themselves. Since they themselves asked for the annulment of the decree which restored the marital relation, which is favored by public policy, we are unable to discover any reason or rule of law which inhibits them from invoking the jurisdiction of the court that granted the divorce or that disables that court from granting them the relief prayed for."

The Colorado law relating to interlocutory decrees is similar to the Utah Statute, in that no final decree is rendered, and the interlocutory decree becomes final upon expiration of time alone. *Morris* v. *Probst,* 98 Colo. 213, 55 P. 2d 944, 104 A. L. R. 650.

A more recent case in the same jurisdiction, extending the rule of the *Githens* case, is that of *Jordan* v. *Jordan,* 105 Colo. 171, 96 P. 2d 13, 14, the facts of which were as follows:

The husband and wife were divorced in 1935, on the cross-complaint of the wife, the husband not appearing after having filed the original complaint for divorce. The decree became final November 2, 1935. On October 31, 1938, the wife filed a petition relating that subsequent to entry of the interlocutory decree and before entry of the final decree the parties had become reconciled and have since cohabited and lived together as husband and wife. The husband denied these allegations. The State Supreme Court affirmed the lower court in vacating the decree in the following language:

"The question is, Must decrees of the nature here, wholly disregarded by the parties, remain sacrosanct nevertheless? The only office of such decree is to make judicially evident the fact that the marriage relation between the parties, although once obtaining, no longer exists. Where the parties, as here, continue their marriage notwithstanding the divorce, upon what rule or reasonable hypoth-

esis should decrees erroneously determining otherwise remain of record? We think of none. On the contrary, as we conceive, public policy demands that the parties to such a situation be relegated to the status resulting from their formal marriage, and which, as now appears, their alleged shortcomings did not rupture nor decrees of court interrupt. That which seems desirable procedure is best effectuated by vacating the decrees, as was done by the trial court. See *Githens* v. *Githens,* 78 Colo. 102, 239 P. 1023, 43 A. L. R. 547.

"We do not regard section 20, Chapter 56, 35 C. S. A., as applicable here. The limitation there prescribed has to do with the efforts of one of the parties to reopen a divorce case after expiration of the fixed time. No such question is here presented. By their unmistakable conduct, clearly established, both parties treated the decrees as if nonexistent. Consistently, the circumstances considered, the courts can do no less."

In the *Jordan* case only one of the parties petitioned for a vacation of the divorce decree, yet on a showing that the parties had actually become reconciled and resumed cohabitation, the court set aside the decree. *Githens* v. *Githens,* achieved the same result where both parties petitioned the court. Apparently then, the controlling principle in view of the *Jordan* case is that the parties actually resumed their marital status during the interlocutory period. The difficulties encountered in vacating a divorce decree upon a showing by one of the parties alone are exemplified in the case of *People ex rel. Jordan* v. *District Court,* 105 Colo. 174, 96 P. 2d 12, which involved the same parties, and indicates that the showing in the prior proceeding to vacate the decree was open to question. Nevertheless, if a divorce decree can be set aside on the petition of both parties after the interlocutory period has expired under statutes such as are found in Colorado and Utah, then there seems to be no logical reason why the decree could not be set aside upon application of one of the parties, if actual resumption of marital relations could be shown. The matter would resolve itself into one of proof.

Many cases have not needed to go so far as has the Colorado Court in finding a ground for setting aside final divorce decrees, since present in a great many of the cases are

fraudulent misrepresentations to, or concealments from either the other spouse or the court, or both, which have brought the particuar case within the rule that a judgment may be attacked in a proper proceeding and set aside for fraud. Examples of such cases are: *Tobin* v. *Tobin,* 70 R. I. 362, 38 A. 2d 756; *Berger* v. *Berger,* 44 R. I. 295, 117 A. 361; *Rhea* v. *Millsap,* 68 Cal. App. 2d 449, 156 P. 2d 941; *Olson* v. *Superior Court of Merced County,* 175 Cal. 250, 165 P. 706, 1 A. L. R. 1589; *Kronman* v. *Kronman,* 129 Cal. App. 10, 18 P. 2d 712; *McGuinness* v. *Superior Court,* 196 Cal. 222, 237 P. 42, 40 A. L. R. 1110, and many others. A distinction however exists in the manner in which the interocutory decree becomes final in states where such cases have developed. Where there must be a final decree entered, and the petitioning party fails to reveal to the court the resumption of marital relations which would defeat the right to a final decree and petitions the court for that final decree, the fraud is particularly apparent, and represents ample justification for the court setting aside such decree where the truth is brought to the attention of the court. The court has in effect adjudicated a false set of facts, and entered a final decree based thereon. The court, had it known the true state of facts, would not have entered such a decree, and the purpose of the interlocutory period would have been realized, that is, a reconciliation of the parties. Fraud in such case would justify the court in setting aside the decree as in any other type action.

The court's attention is called to the case of *Shinn* v. *Shinn,* 148 Neb. 832, 29 N. W. 2d 629, 174 A. L. R. 510, where under a statute simiar in effect to the Utah and Colorado Statutes, the court set aside a decree of divorce in a suit in equity to have such decree set aside for fraud. It is contended that this case sustains the appellant's position. The theory of the case appears to be that failure to notify the court of resumption of marital relations amounts to a fraud, even though there is no actual misrepresentation to the court as to the status of the parties. In this case there was an

omission to tell the court something which, had the court known, it would have acted to extend the interlocutory period; as distinguished from a misrepresentation to the court that the parties are not living together and thus securing a final decree, when in fact the parties are living together. Such a view strains the application of the doctrine of fraud by finding a duty on the parties to call attention of the court to the fact of resumption of marital relations. Many problems present themselves, some of which will be discussed later, which make the existence of such a duty doubtful. The appellants in the present case however did not proceed upon the theory that a fraud had been perpetrated on the court, and it woud be difficult to see how this could be true in view of the facts related in the petitions to set aside the decrees.

If a representation is made to the court by either party or by some third party, or if the court concludes independently that there exists the possibility of reconciliation of the parties during the interlocutory period, then it is consonant with the policy of the law and public policy for the court to extend the interlocutory period, and thus prevent its becoming final. Similarly when the parties to a divorce proceeding have resumed marital relations during the interlocutory period, and have notified the court to this effect, during the interlocutory period it is the policy of the law and the view favored by public policy, that the court vacate the decree, so that it will appear of record that no divorce in fact was ever granted. In the case of the extension of the interlocutory period, there is an extension of record which indicates that the marriage relationship at least for some purposes is still in existence, and no uncertainty is therefore involved. In the case of vacating the decree, upon a showing, before the decree has become final, that the parties have resumed marital relations, there will appear no divorce of record, and all uncertainties would be resolved in favor of the existence of the marriage.

Where, however, the expiration of time, without either of these conditions having occurred, has rendered the decree

final, then there has been an adjudication that the status of marriage has ceased to exist between the parties. Thereafter their rights are those of unmarried individuals. If the decree thereafter is open to attack on the basis of the parties having lived together without having told the court, before the decree became final, then no certainty is achieved by the decree becoming final, and in fact the situation becomes one where ostensibly the rights of single persons devolve upon the parties so far as the record will show, yet actually, these rights do not exist. Potentially each such situation, whether in existence presently, or to come into existence in the future, represents a situation fraught with possible prejudice or injury to the rights of third persons, yet the court could not possibly know in advance what persons, nor what rights would be prejudiced or injured. Even though the parties represent that no rights of third persons are involved, the court could not know this for a certainty, and if the court as a condition to the vacating of a divorce decree should make it subject to the rights of third persons, this would but serve to perpetuate further questions of future determination.

If it is alone the living together of the parties during the interlocutory period which is the basis for vacating the decree of divorce, then what would be the effect of the parties having bona fide resumed marital relations for a part of the time, and thereafter separated and one or both remarried other persons, in reliance upon the decree which apparently dissolved the status of marriage? And, what would be the effect of such a period of resumption of relations existing over a period of less than the interlocutory period? What period would be determinative of the resumption of marital relations which would justify the setting aside of such decree? Is a test to be applied similar to that of condonation in divorce proceedings?

Or, assuming a set of fact similar to those in the present cases, where the parties have continued to live together after the decree has become final, and they then separate.

Would there be the necessity of a further divorce? Since Utah does not recognize common-law marriage, *Schurler* v. *Industrial Commission*, 86 Utah 284, 43 P. 2d 696, 100 A. L. R. 1085, if the parties are married, then it must be by virtue of the fact that the divorce decree is nullified by the living together during the interlocutory period. What would be the status of parties who of record appear to have been divorced but, who are not in fact divorced because they resumed marital relations during the interlocutory period, without so notifying the court?

Myriads of problems present themselves, all springing from the thought that living together during the interlocutory period without anything further is sufficient to sustain the marriage, and avoid the decree of the court. This would be in fact allowing the parties to determine marriage or non-marriage, regardless of the court. If the view taken by the *Githens* case and the *Jordan* case is adopted, then apparently the court has inherent jurisdiction any time after the decree becomes final, to set aside that decree. In the *Githens* case, fourteen years had elapsed. In the absence of recognition of common law marriages contracted in the state of Utah, we do not think that the courts of this state have any such inherent jurisdiction. All the elements of public policy and policy of the law which go to favor reconciliation during the interlocutory period, and preservation of the marital status, are at an end when the status of marriage has been dissolved, and there arises a policy of the law favoring certainty in the preservation and maintenance of the rights which the declaration of termination of marital status creates. Any other rule would lead to uncertainty and chaos which would plague both the courts and society, and which would not be justified in preserving marriages theretofore dissolved. The obvious and ready remedy, that of requiring the parties to remarry, is so accessible to all who desire to perpetuate their marital status, that we are impelled to require this as an adequate substitute where the parties find themselves

as did these parties, with a declaration that the marriage has been dissolved.

In holding as we do, we are aware of the difficulties which are presented. Possible hardship on children of such relationship where the parties are not, or have not remarried, may arise, as will also the possible inheritance rights of the survivor of such a relationship. These problems can be resolved once and for all however, by a determination that no marriage can exist after the interlocutory period has become final, except where the decree can be attacked on recognized grounds, or there is a remarriage of the parties; whereas, the declaration that the decree can be vacated and set aside would serve to perpetuate forever the uncertainties and questions we have posed, plus a mutitude of other problems which might arise.

For these reasons, we conclude that resumption of marital relations during the interlocutory period, and the failure to notify the court to this effect prior to expiration of the interlocutory period, whatever the reason for the failure, and petition after the judgment becomes final is not sufficient ground to invoke the discretionary power of the court, under Section 104-14-4, U. C. A. 1943.

Attention of the court is called to the case of *Salt Lake City* v. *Industrial Commission,* 82 Utah 179, 22 P. 2d 1046. The extent of the inquiry in that case was only as to whether or not jurisdiction continued in the District Court to permit action by that court, where the attack was collateral in nature. No attempt was made to determine whether or not there was sufficient grounds for invokng the discretionary power of the court, which is the question before the court in the present case. Freeman on Judgments, Vol. 1, 5th Ed., Section 213 indicates that the better view is that such statutes do apply generally to divorce proceedings. The case of *Carmichael* v. *Carmichael,* 101 Or. 172, 199 P. 385, and the line of cases following it in Oregon also so indicate. The *Salt Lake City* v. *Industrial Commission* case recognized the

applicability of Section 104-14-4, generally, but did not pass upon the sufficiency of the grounds in that or any other particular case.

There is nothing in that case which indicates that the court is disposed to follow the rule of *Githens* v. *Githens,* supra, in the absence of the applicability of Section 104-14-4. While such a rule might possibly be appropriate in a state recognizing common-law marriages, it can have no application in Utah where such marriages are not recognized when contracted in Utah.

Judgment of the lower court is affirmed, with costs.

WADE, WOLFE, LATIMER and McDONOUGH, JJ., concur.