275 P.2d 696

Golda TAYLOR, Appellant,

v.

Stanford PATTEN, Respondent.

No. 8119.

Supreme Court of Utah.

Oct. 26, 1954.

F. Briton McConkie, Salt Lake City, for appellant.

Dean E. Terry, Young, Young & Sorensen, Provo, for respondent.

WADE, Justice.

Plaintiff, Golda Taylor, appeals from a dismissal of her complaint against defendant Stanford Patten, respondent here, who was formerly her husband. She alleged that he intentionally beat and assaulted her during the interlocutory period of their divorce action while they were living apart. The dismissal is reversed because under our statutes a wife may recover from her husband for intentionally inflicted injuries.

Although our statutes do not expressly authorize such recovery, a liberal construction with a view to effect their objects and promote justice [1] indicates that such was the legislative intention. We agree that this represents a sound public policy and that experience of courts where it has been in operation has demonstrated that the dire results which courts have been wont to an-

1. See section 68-3-2, U.C.A.1953, and cases to that effect cited in the note thereto.

ticipate therefrom have not materialized. However, we reach this result not because we agree with the policy but because it is the policy adopted by the legislature, which body is responsible for the policy adopted and may change it if experience shows that a change is desirable. If the doctrine that statutes in derogation of the common law must be strictly construed were to be followed a contrary result might be reached, but such doctrine should not be followed here[2] because the legislature intended that the courts should recognize and enforce intended changes in the common law. A majority of the states do not allow a wife to recover in this kind of a case. This is accounted for largely because the courts strictly construe their statutes and because of a difference between the statutes[3] involved, but there are many states which do allow such a recovery and the number is constantly increasing.[4]

The judicial code dealing only with procedure which authorizes a wife to "sue and

2. This difference in statutory construction is analyzed in Courtney v. Courtney, 184 Okl. 395, 87 P.2d 660.

3. See Courtney v. Courtney, supra, note 2, and Brown v. Gosser, Ky., 262 S.W.2d 480, 482, where it is said at pages 482 and 483 of the Southwestern Reporter that: "The minority rule received its greatest impetus from the dissenting opinion of Justice Harlan, concurred in by Justices Holmes and Hughes, in the case of Thompson v. Thompson, 1910, 218 U.S. 611, 31 S.Ct. 111, 114, 54 L.Ed. 1180, 30 L.R.A.,N.S., 1153, 21 Ann.Cas. 921. Their dissent was based squarely on the wording of a District of Columbia married woman's statute which, to our mind, is no broader than our equivalent Kentucky statute.

   *   *   *   *   *

   "It is said in the case of Courtney v. Courtney, 1938, 184 Okl. 395, 87 P.2d 660, that nine states, in addition to Oklahoma, have adopted the minority rule. They are: Alabama, Bennett v. Bennett, 224 Ala. 335, 140 So. 378; Arkansas, Katzenberg v. Katzenberg, 183 Ark. 626, 37 S.W.2d 696; Connecticut, Kalamian v. Kalamian, 107 Conn. 86, 139 A. 635; Colorado, Rains v. Rains, 97 Colo. 19, 46 P.2d 740; New Hampshire, Gilman v. Gilman, 78 N.H. 4, 95 A. 657, L.R.A. 1916B, 907; North Carolina, Roberts v. Roberts, 185 N.C. 566, 118 S.E. 9, 29 A.L.R. 1479; South Carolina, Prosser v. Prosser, 114 S.C. 45, 102 S.E. 787; North Dakota, Fitzmaurice v. Fitzmaurice, 62 N.D. 191, 242 N.W. 526; and Wisconsin, Fontaine v. Fontaine, 205 Wis. 570, 238 N.W. 410. It is also pointed out in the Courtney case that some of the decisions in those states which still follow the common law rule are based on the peculiar wording of the statute in the particular state.

   *   *   *   *   *

   "It is also worthy of note that legal writers on this subject, apparently without exception, support the minority rule on the ground that the emancipation statutes and recognition of the right of one spouse to sue the other on contract, as well as in certain other instances, have eliminated the reasons on which the common law rule is based. Prosser on Torts, § 99, page 904, 43 Harv.L.Rev. 1030, 10 Cal.L.Rev. 461, 10 Ind.L.J. 290."

4. See cases cited in notes 2 and 3. In addition to the ten states pointed out in Courtney v. Courtney, supra note 3, as following this rule, four other states have adopted it. They are Idaho, Lorang v. Hays, 69 Idaho 440, 209 P.2d 733; Illinois, Brandt v. Keller, 413 Ill. 503, 109 N.E.2d 729; Kentucky, Brown v. Gosser, supra note 3, and Utah.

be sued in the same manner as if she were unmarried"[5] does not alone confer upon a wife a new substantive right to recover damages from her husband for intentionally inflicted personal injuries, but when considered with our statutes dealing with the rights of husband and wife they do have that effect. Under section 30–2–2, U.C.A. 1953, "Contracts may be made by a wife, *and liabilities incurred and enforced by or against her, to the same extent and in the · same manner as if she were unmarried."* (Emphasis ours.)

Under section 30–2–4, U.C.A.1953, "A wife may receive the wages for her personal labor, maintain an action therefor in her own name and hold the same in her own right, and *may prosecute and defend all actions for the preservation and protection of her rights and property as if unmarried.* There shall be no right of recovery by the husband on account of personal injury or wrong to his wife, \* \* \* but the wife may recover against a third person for such injury or wrong as if unmarried, \* \* \*." (Emphasis ours.)

These sections are not limited to procedure but deal with substantive rights as well.

The disability of a wife and to some extent of a husband to sue and be sued at common law is based upon a fiction indulged by the courts that the husband and wife are one, that the wife's individuality during that period became merged in that of her husband. All of her personal property which he could reduce to possession during their marriage became his, and he had the right of possession, management and control of her real estate. During that period she could not sue for damages to her person, or property or for any other property rights but such suits were brought in the name of her husband and any damages or personal property which he recovered belonged to him and he had the right of possession and control of her real estate. Under that concept the wife could not sue her husband, not only because of the procedural difficulty that it would require the husband to sue himself but also because she could acquire no substantive right against him because he would be the owner of whatever he recovered in such suit.[6] Under modern Husband and Wife statutes, such as ours, this fiction has been completely eliminated and the wife has been completely emancipated from this inability to own, control and manage her property, and from her inability to sue and be sued for the protection of her property and personal rights. The reason for her inability and lack of rights has been completely eliminated with the logical result that such courts hold her disabilities and loss of rights have completely disappeared with the common law fiction that the husband and wife are one. Since the reason on which that disability was based has been

---

5. See 78–11–1, U.C.A.1953.

6. See cases cited in notes 2, 3 and 4, 43 Harvard Law Review 1030.

eliminated, it is not necessary now to have an additional express statutory provision declaring that marriage does not disable a party thereto in enforcing tort liability against the other spouse.[7]

Our Husband and Wife statutes recognize in both husband and wife every kind of right which they were deprived of by the common law fiction that they were one, including the right to own, possess and manage every kind of real and personal property, the right to sue and be sued for the protection of every kind of property and personal rights even as against the other. Besides the rights granted in the statutes above quoted, our statutes provide that the wife may be and remain the owner with the right of possession and control of all of her property whether acquired prior to or during coverture, which she may convey, devise and bequeath as if she were unmarried and that such property shall not be liable for the debts of her husband.[8] A conveyance, transfer or lien executed by husband or wife in favor of the other shall be valid the same as between other persons.[9] Neither husband nor wife is liable for the debts of the other whether contracted before or after marriage except for family expense or other liabilities which such party has contracted to pay, nor are the wages, earnings or property or the rents or income therefrom liable for the debts of the other.[10] A husband or wife may sue the other for possession or control of his or her property the same as if unmarried.[11] Damages may be recovered only from the wife for civil injuries committed by her [12] and a husband or wife may appoint the other as his or her agent or attorney in fact and may revoke such appointment the same as other people.[13]

From the foregoing it is clear that the legislature intended to establish the separate identity of the husband and wife in all property and personal rights the same as if they were not married. Giving these statutes a liberal construction to effect their objects and in the interest of justice requires us to hold that a wife can sue and be sued the same as if she were unmarried, even for the recovery of damages from her husband for intentional personal injury. As was said by the Supreme Court of Illinois in Brandt v. Keller, supra, on page 734, 109 N.E.2d:

"Under our interpretation, the provision in question reflects a legislative intent to establish the separate identity of a married woman in all litigation, and to remove all her common-law disability with reference to suing and being sued, so that she will be placed in

7. See authorities cited in note 6.

8. See section 30–2–1, U.C.A.1953.

9. See section 30–2–3, U.C.A.1953.

10. See section 30–2–5, U.C.A.1953.

11. See section 30–2–6, U.C.A.1953.

12. See section 30–2–7, U.C.A.1953.

13. See section 30–2–8, U.C.A.1953.

the same status 'as if she were unmarried.' It is our province to effectuate this purpose by construing the phrase 'in all cases' literally, so as to include all actions against all persons, including her husband, rather than to interject exceptions or give a restrictive interpretation to the statutory provision which would merely perpetuate a vestigial concept based upon the abrogated common-law rule that a married woman's rights and property belong to her husband."

Under this theory the husband could recover damages from his wife the same as she could recover from him for personal injuries intentionally inflicted during marriage. For the disability of the husband to sue his wife at common law comes from the same fiction that the two are identical indulged by the courts at common law which has now been removed by statute.

This does not mean that a husband or wife can recover from the other for any unwanted caress, kiss, or other physical contact as sometimes claimed. The marriage relation is created by the consent of both of the parties; inherently within such relationship is the consent of both parties to physical contacts with the other, personal dealings and ways of living which would be unpermitted and in some cases unlawful as between other persons. The essential objects and purposes of marriage such as living together, creating a home and rearing a family are expected and consented to by husband and wife but would be unlawful and in some instances even criminal as between other persons. Under some circumstances such consent might be withdrawn and thereafter would not prevent civil liability occurring, but until that happens the ordinary dealings between husband and wife are with the consent of both and do not create liability between them. However this does not mean that either husband or wife consents to intentionally inflicted serious personal injuries by the other.[14]

Judgment reversed witih directions to reinstate the complaint and proceed with the action.

Plaintiff shall recover her costs.

JOSEPH G. JEPPSON, District Judge, concurs.

WOLFE, C. J., being disqualified, did not participate in the hearing of this cause.

CROCKETT, Justice.

I concur with Mr. Justice WADE'S conclusion that this action may be maintained, but deem it proper to limit my concurrence to the facts here presented, i. e., that the plaintiff may sue the defendant for an alleged intentional personal injury commit-

14. See cases cited in previous notes, particularly Courtney v. Courtney, supra; Brandt v. Keller, supra, and Lorang v. Hays, supra; and 43 Harvard Law Review 1030.

ted during the interlocutory period, but to reserve judgment as to the more comprehensive proposition that such a suit could be maintained at any time during the marriage relation. This may seem inconsistent because this court has said that the parties are still married during the interlocutory period.[1] But this is certainly not so in the absolute sense. Those cases were dealing with property rights and rights of inheritance. It is obvious that the legal status is not exactly the same,—the rights and privileges of the spouses of a strictly personal nature incident to the marital relationship are suspended. I think there is a possibility that a different result may be arrived at under proper principles of judicial interpretation.

Where there is room for legitimate difference of opinion as to the meaning and application of statutes, as the briefs of counsel, and the difference in the opinions of the judges of this Court indicate exists here, it is not only permissible to give consideration to well-defined standards of public policy, but they should have an important bearing on the result, especially where the court is under mandate of law to liberally interpret and apply the statutes to give effect to their objects to promote justice.[2]

Unquestionably the general purpose of the modern statutes referred to is to emancipate women and eliminate disabilities which existed under common law, including the fiction that the husband and wife are legally one. The latter seems to have been but a specious excuse for not allowing such suits rather than any valid reason. There was a sounder and more basic reason why such suits were not favored: i. e., the thought that allowing them would challenge the authority of the master of the home, disrupt its peace and harmony and thus threaten the marriage relation. The desirability of favoring a policy which would tend toward harmonious home life has always been recognized, and is of no less importance in our modern society, even though strife, discord and disruption of families is much more prevalent than formerly. Furthermore, in recent years there has arisen an additional reason why policy considerations would impel one to think that a wife should not be allowed to sue her husband in tort. If such suits can be maintained, widespread insurance coverage, particularly in automobile cases, poses a great temptation for collusion, which it should not be the policy of the law to encourage. The foregoing considerations may well be deemed to be of sufficient importance to lead to the conclusion that such suits should not be maintainable during coverture.

But it seems to me that the factors upon which the policy just discussed is based are either non-existent, or at least not near-

1. Sanders v. Industrial Commission, 64 Utah 372, 230 P. 1026; In re Johnson's Estate, 84 Utah 168, 35 P.2d 305.

2. Sec. 68-3-2, U.C.A.1953.

ly so cogent during the interlocutory period. The interlocutory decree recognizes that the marriage has already been disrupted and adjudicates that there are sufficient grounds for breaking the marriage contract. While the union is not absolutely dissolved, the marital rights are suspended and will automatically expire unless something is done to prevent the judgment from becoming absolute before the end of the interlocutory period.[3] Even though it is true that the purpose of the decree is to give estranged spouses an opportunity to become reconciled, it is also true that divorce is often accompanied by bitterness and ill feelings which sometimes result in violence and injury. If the suit were not maintainable, a wife might suffer grievous injury or abuse and be entirely without remedy at a time when she most needs the protection of the law. This runs counter to one of the basic precepts: There is no wrong without a remedy.[4] To leave such an aggrieved wife without redress would seem to be a greater evil than might eventuate from the possible further disruption, or prevention of reconciliation of marriages already wrecked. Also, the danger of collusion is greatly minimized.

The fact that there is uncertainty about the proper interpretation of the statutes permits public policy to be considered in applying them. A suit of this nature would be a great deal more harmful to family unity if brought *before* an interlocutory decree of divorce than such a suit afterwards. Therefore it seems advisable to me to meet the general problem if and when it arises, and to limit my concurrence to the facts here presented: that the suit may be maintained during the interlocutory period.

HENRIOD, Justice.

I dissent.

The main opinion interprets sections 30-2-2 and 30-2-4, U.C.A.1953, in arriving at its result, construing them to include a right in a wife to sue her husband in tort. These are but 2 of 10 sections under the general heading "Husband and Wife" and the subtitle "Property Rights." All 10 deal with certain *specific* rights and obligations which a wife did not have at common law, but they certainly do not cover the whole field. They give her the right or obligation 1) to own property separately, 2) to contract, 3) to deal in property with her husband, 4) to keep wages she earns and damages she collects, 5) to be exonerated from her husband's obligations, 6) to sue her husband for her own property, 7) to be sued for civil injuries committed by her, 8) to act as agent for her husband, 9) to be charged for family expenses and 10) to be secure in the homestead.

Nowhere in the sections mentioned can be found any reference to *tort* liability of one spouse against the other, although *specifically* and *clearly* the *property rights and*

---

3. Johnson v. Johnson, 116 Utah 27, 207 P. 2d 1036.

4. 1 C.J.S., Actions § 4, page 969.

*liabilities* among spouses are spelled out. Section 30–2–2, from which the main opinion has wrung not only tort liability but complete emancipation for wives, reads as follows: *"Contracts* may be made by a wife, and liabilities incurred and enforced by or against her, to the same extent and in the same manner as if she were unmarried." (Italics supplied.) Nowhere is there any mention made of torts or anything else save *contracts*. If the section were intended to include torts and all other rights and liabilities as the main opinion holds, all of the other 9 sections which obviously deal with specific and particular rights, which wives did not have at common law, are composed of meaningless and wasted words.

In my opinion, the decision in this case inverts every well-established rule of statutory construction we have, including the universally accepted doctrines of ejusdem generis and noscitur a sociis which call for kinship of meaning among words, where, as here, general language follows the particular.[1] Every such rule compels the conclusion that the word "liabilities" found in section 30–2–2 is related directly to the preceding word "contracts" and means liabilities founded on contract. The legislative history of 30–2–2 bears out such contention. The section dates back to Sec. 1199, Revised Statutes of 1898, whose language was slightly different, but the same so far as use of the word "contracts" followed by "liabilities" is concerned. The heading of that section is "Wife's Contracts" indicating that the Legislature had in mind contracts and contractual liabilities only. A compilation which follows, being Compiled Laws of Utah 1907, reads exactly the same, as does the Compiled Laws of Utah 1917. In Revised Statutes of Utah 1933 the heading of the pertinent section was changed to "Wife's right to contract, sue and be sued", and such heading persisted through the Utah Code Annotated 1943 and 1953. Nowhere can be found the slightest reference to any kind of tort liability. The change in title and wording appears not to have evidenced any change in legislative intent, since the 1933 Code Commission in its report indicated specifically whether any changes had been made in any of the titles, and no such indication of change in context or intent was made in the report as to 30–2–2. Apparently even counsel for plaintiff concedes that 30–2–2 pertains only to contractual rights and liabilities, since nowhere in his brief has he contended that this section specifically had anything to do with tort liability, but was only one section of many that indicated "the mind of the legislature was to completely emancipate women." The writer believes the converse to be true, that the particularization of the legislature showed an intention to give a woman only those rights particularized, which she did not have at common law, and not those which were not specified. The basis of the ma-

1. Sutherland, Statutory Construction, Vol. II, P. 814; Crawford, Statutory Construction, p. 527, Sec. 265.

412

jority opinion appears to be something sua sponte.[2]

Even though we must construe statutes liberally and not strictly if they are in derogation of the common law,[3] it does not follow that we are licensed to legislate by attaching unwarranted or unnatural significance to words in a statute, or to emphasize general language and say it connotes something other than that which clearly is meant by preceding particular language which it modifies. Furthermore, we should hesitate to depart from the fundamental principle that requires specificity and clarity of language in a statute before long-established rights, duties and privileges are attacked or destroyed,—there being neither specificity nor clarity of language in our statutes which would give to a wife an action in tort against her husband.

The main opinion quotes from the Illinois case of Brandt v. Keller, upon which it leans so heavily for support, in giving a wife an action in tort against her husband. The Illinois statute is completely different from ours and goes all out by saying a wife *in all cases* may sue and be sued *to the same extent* as if unmarried. It hardly can be any authority in helping us to construe our quite different statute.

It seems obvious to the writer, that instead of creating tort rights in the wife, section 30–2–4 is designed only to give to the wife and take from the husband the common law right to wages and to damages for torts committed by third persons upon her. Nothing is mentioned about any right against the husband. Certainly the section does not *clearly* and *specifically* give her any such right, but negatives any such idea by allowing her to recover only against *third persons*. If the legislature had intended to give her a right against her husband, it simply could have said she could "recover against *all* persons" instead of against only "a third person." Proper application of the rules ejusdem generis and noscitur a sociis requires that the words "may prosecute and defend all actions for the preservation and protection of her rights and property as if unmarried" be read in connection with and in modification of the previous words "wages for her personal labor," so that the meaning of the section, properly paraphrased would be reflected in the following language: "may prosecute and defend all actions for the preservation and protection of her rights and property [hereby given, but denied her at common law] in said wages, as if unmarried."

It becomes further obvious that the majority opinion is in error so far as section 30–2–4 is concerned, when the history of the section upon which it relies is traced. The provisions of section 30–2–4, U.C.A. 1953, first appeared in Utah as Sec. 1201, Revised Statutes of Utah 1898, which latter section was taken from McClain's Annotat-

2. Thompson v. Industrial Comm., 99 Utah 234, 104 P.2d 629.

3. Section 68–3–2, U.C.A.1953.

ed Code of Iowa, Revised Statutes 1888, § 3402, which used identical language: "may prosecute and defend all actions for the preservation and protection of her rights and property as if unmarried." The language in the McClain Code was in turn taken from Sec. 2211 of the Iowa Code of 1873. Between 1873 and 1888, McClain Code, the case of Peters v. Peters, 1875, 42 Iowa 182, was decided, in which the Iowa Supreme Court clearly held that such language did not give a wife a right of action against her husband for assault and battery. Hence, when Utah took its statute from Iowa, in accordance with well-established principles of construction, it took it as it was construed by the highest court of the state from whence it came,[4] which held that in a case identical to the instant case, the wife had no right of action to sue her husband for an assault and battery. The construction placed on the statute by the Iowa Supreme Court, obviously is not so unreasonable as to permit us to ignore it, as conceivably we might do.[5]

Looking at the authorities generally, practically all of them preclude recovery by a wife for tortious acts committed by her husband, absent a statute which specifically and clearly gives her such right. It is conceded that a respectable minority, supported generally by textwriters, opposes such a view. Both are represented by cases advancing various and different reasons for their conclusions. Some, supporting the majority, say that in absence of statute, the common law principle that wife and husband are one persists; that one spouse cannot sue the other; that such suits would be against public policy; that marriage implies consent not present in other relationships; that for a wife to sue her husband is useless since such right and the proceeds thereof are the husband's at common law; that to sanction suits by a wife against her husband, a statute must specifically and clearly permit them, etc. Cases sympathetic to the minority almost crusadingly talk about Married Women's Acts emancipating women expressly or by necessary implication; that the fiction that wife and husband are one is so archaic as to merit no consideration; that it is not against public policy for one spouse to sue the other; that a wife always had a right but no remedy at common law because of the fiction, which, once removed, gives her a right to assert her cause; that if the purpose of marriage has disappeared, there is no reason to deny the wife redress; that there is no reason why she should be able to recover for a broken promise but not for a broken arm; that any injury to her is a cause of action which in turn is a constitutionally protected property right, etc. This wide divergence is accentuated by the fact that more than usual the cases are punctuated by split decisions, and more than usual

4. 2 Sutherland, Statutory Construction, Sec. 5209.

5. Holloway v. Wetzel, 86 Utah 387, 45 P. 2d 565, 98 A.L.R. 1006; In re Reynolds Estate, 90 Utah 415, 62 P.2d 270.

strong and almost angry language is used. Without referring to the many cases, few of which are helpful here, it is suggested that the subject almost can be exhausted by reading Courtney v. Courtney, 184 Okl. 395, 87 P.2d 660, the authorities therein cited and searching backward and forward therefrom.

Everyone sympathizes with the beaten wife and abhors the wife-beater, who almost invariably assumes not only the role mentioned, but that of a coward. If what plaintiff alleges be true, a bread and water diet at an appropriate place for an extended period of time would be all too good for him. Concededly there seems to be little or no logical reason why a wife should be able to recover against her husband for a broken promise but not for a broken arm. However, it is for the legislature, not us, to give such a right. Such right has not been given by the Utah legislature, and this court should not legislate by writing into our statute words designed to eliminate common law disabilities relating to coverture which simply are not there. Plaintiff's cause must be statutory, if one she has, since this State has adopted the common law of England where not constitutionally or statutorily repugnant[6] and no end of rhetoric or argument about public policy, archaic principles, protected property rights, obsolete fictions, historical sex equality, destruction of the purpose of marriage, and the like, can change the basic questions: Have our statutes specifically and clearly given a wife the right to sue her husband for an assault and battery, a right she did not have at common law? To answer this question, we must look at this case through the eyes of a fish, and hear it with an ear deafened to emotion, quite apart from what we might like the result to be, or its popularity, and in doing so, I believe we should and must conclude that our statutes have given a wife no clear, specific right to sue her husband in tort, and that we must resort therefore, to the common law, which denied her such right.

So far as authorities from sister states are concerned, few are helpful because of the wide divergence in fact, reason and result. I believe that those which are more nearly analogous to our instant case, are superior numerically and in reasoning.[7]

6. Section 68-3-1, U.C.A.1953.

7. Conley v. Conley, 92 Mont. 425, 15 P.2d 922; McKinney v. McKinney, 59 Wyo. 204, 135 P.2d 940; Watson v. Watson, 39 Cal.2d 305, 246 P.2d 19; Paulus v. Bauder, 106 Cal.App.2d 589, 235 P.2d 422; Cubbison v. Cubbison, 73 Cal.App.2d 437, 166 P.2d 387; Peters v. Peters, 156 Cal. 32, 103 P. 219, 23 L.R.A.,N.S., 699; Willott v. Willott, 333 Mo. 896, 62 S.W. 2d 1084, 89 A.L.R. 114; Peters v. Peters, 42 Iowa 182; Bandfield v. Bandfield, 117 Mich. 80, 75 N.W. 287, 40 L.R.A. 757; Keister's Adm'r v. Keister's Ex'rs, 123 Va. 157, 96 S.E. 315, 1 A.L.R. 439. See also arguments in cases cited in the recent case of Ball v. Ball, Wyo.1954, 269 P.2d 302, having to do with the rule that an unemancipated child cannot sue its parent in tort, which arguments seem somewhat apropos, at least in some respects, where a wife seeks to sue her husband in tort. Contra: Lorang v. Hays, 69 Idaho 440, 209 P.2d 733; Rains Rains, 97 Colo. 19, 46 P.2d 740.

California for many years and in several cases reached the result contended for by the writer. In a supplemental memo of authorities, counsel for plaintiff presented the case of Carver v. Ferguson, Cal.App., 254 P.2d 44 (Jan. 27, 1953), which appeared to reverse California's line of decisions and permitted a wife to sue her husband in tort. Investigation indicates that the California Supreme Court granted a review of this case on March 26, 1953, and that, at the instance of the parties the case was dismissed on June 4, 1953, and thereafter remitted, which, I am informed, has the effect of rendering the decision of the District Court of Appeals impotent so far as being a precedent is concerned.

It would appear that whether the tort is committed before the interlocutory period begins to run or after it begins but before final decree, is immaterial as to whether the wife may or may not sue.[8]

In conclusion, the writer believes and there is ample material in the cases to substantiate such conclusion, that any movement in the direction of the minority view, that a wife should be able to sue her husband in tort, is the result of a desire on the part of courts to allow a wife to recover from insurers in automobile accident cases where her husband is the owner and driver of the insured vehicle and where recovery on her part is dependent on her being able to sue her husband in tort to establish liability. In accomplishing such a result, it seems to me that courts simply are inviting fraud and collusion, besides invading the legislative domain. They are inviting fraud not only in the auto accident cases, but in other types such as divorce cases, where, after this decision becomes the law of Utah, there will be considerable temptation for some litigants to join in a divorce action, a healthy count for damages arising out of some real or imaginary physical encounter occurring prior thereto.

McDONOUGH, C. J., concurs in the dissenting opinion of HENRIOD, J.

8. Watson v. Watson. Paulus v. Bauder, See note 5, supra.